# UNITED STATES DISTRICT COURT FOR THE

# DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Morris | x | Case No. 1:07 – CV – 194 |
| | x | (GMS) |
| vs. | x | **MEMORANDUM IN** |
| Carroll et al | x | **SUPPORT OF Sec. 2254** |
| | x | **MOTION OF ALONZO MORRIS Jr.** |



FILED

MAY – 7 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**Alonzo W. Morris Jr.**
**SBI# 263971**
**Delaware Correctional Institute**
**1181 Paddock Road**
**Smyrna, DE  19977**

## INTRODUCTION

Comes now the defendant, Alonzo W. Morris Jr, pro se, pursuant to 28 U.S.C. Sec 2254, and files this Memorandum in support of his Motion to Vacate and sit aside his Conviction and sentence for violation the 4th, 5th, 6th, 8th and 14th Amendment to the United States Constitution and states the following:

## BACKGROUND

On November 1, st, 1999 at 7:48am Officer Michael Barlow of the Georgetown Police Department, reported to the scene of an assault. Upon arrival Officer Barlow contacted the victim and took his statement (A-1). The victim stated he had been assaulted by Gerald (A-1). Two witnesses Alan Hill and Georgie Swan McCrea were interviewed by Officer Barlow at the scene. The victim was then transported by emergency medical team to Beebe Medical Center. Emergency medical tech Holly Cox states in the medical report that the victim was unable to recall the events of incident (A2, A3). The crime scene was cleared at 8:01am and at 8:45am Officer Barlow was summoned to the defendant's home one block away from the assault, in reference to a domestic disturbance between Lisa and Kathy Stevens (A4, A5). Officer Barlow spoke with defendant, Kathy and Lisa Stevens. Sometime later Ms. Swan McCrea allegedly contacts Officer Barlow stating that the victim meant to identify J.R. Copes not Gerald as his attacker (A1, A6-A11). Officer Barlow then contacts Officer Daniel Davis of the Georgetown Police Department and at 2:00pm Davis and several officers surround the defendant's home and take in defendant into custody (A12-A15). Officer Davis arrests the defendant without a warrant then intentionally falsifies probable cause to justify the warrant-less arrest (A16-A22). On November 3, 1999 Officer Barlow interviews three witnesses from Harvey's Plumbing he believes witnessed the assault (A11). On November 4, 1999 Officer Barlow testifies at preliminary hearing. Barlow states that George Swan McCrea witnessed the attack actually knew the defendant and provided police with identity of the accused (A23, A24) compare (A25-A30). Officer Barlow also states that four witnesses from Harvey's Plumbing (whom he interviewed on audio tape on 11/3/99) identify the defendant via photo line up (A25). On November 5th, 1999 Officer Daniel

2

Davis was subpoenaed to testify before the Grand Jury (A31, A32). November 15, 1999 the indictment and true bill were filed by prosecutor James Adkins (A33, A34). January 4, 2000 discovery was filed by prosecution (A35). January 5, 2000 public defender Ruth Smythe emailed prosecutor James Adkins requesting the photo array used to identify the defendant and the results of the fingerprint test were done on the weapon recovered at the crime scene (A36). Prosecution responded nineteen days later, providing none of the information requested (A36b). On March 13, 2000 trial began in the case. The victim and witnesses from Harvey's Plumbing were asked to identify the defendant while testifying on direct examination (A37, A38) compare (A24, A36b). The victim testified that he didn't see the person who assaulted him in the courtroom (A39). Prosecutor Adkins had the victim get an eye exam on the second day of trial, and presented expert testimony by optometrist Carl Maschauer M.D. Dr. Maschauer stated that the victim was unable to identify the accused due to the injury to his right eye, glaucoma and corrective visual acuity of 20/70 in his left (A40-A52). Three days prior to trial, the prosecutor interviews James Bynum a/k/a Houseman, who states that he witnessed the defendant assault the accused (A53-A62). Richard Hughes an employee of Harvey's Plumbing identifies the defendant during trial (A63-A66). Defendant presented an alibi defense. On March 15, 2000 defendant was found guilty on both charges. On March 22, 2000 a motion for judgment of acquittal was filed and denied by Superior Court on March 24, 2000 (A67-A77). On June 6, 2000 defendant obtained private counsel and filed notice of appeal in the Delaware Supreme Court. On March 28, 2002 the Delaware Supreme Court reversed defendant's conviction (A78-A103). On May 9, 2002 the case was remanded to the Superior Court, bail was set and appointment of new counsel (A104-A105). A motion to dismiss was filed on July 15, 2002 (A106-A110). Defense pursuant to Supr. Ct. R 12 (b) (1) requested the trial court to dismiss charges. Based in part on Double Jeopardy and the states use of pejurious and erroneous testimony to obtain the indictment (A111-A125). The motion was denied. On September 23, 2002 defense counsel petitioned the trial judge for a hearing due to a conflict of interest between himself, the trial court and the defendant (A126). No hearing was held and trial began November 12, 2002. The victim identifies the defendant on the first day of trial (A127-A143). The State presents expert testimony regarding fingerprint analysis by Georgetown Police Officer Daniel Davis (A144-A150). Dr. Carl Maschauer testifies as a expert in optemology (A151-A157). On cross examination misrepresenting information in the warrant affidavit (A158-A160). On direct examination Dr. Maschaver totally contradicts his previous trial testimony and states the victim has a visual acuity of 20/50 which allows him to obtain a

drivers license. There was a curative instruction given to the jury to insure the jury was not misled to believe that the defendants arrest was illegal (A161-A172). On November 19, 2002 defendant was found guilty on all charges. Defendant filed his direct appeal pro-se, the Supreme Court affirming the trail courts decision on March 4, 2004 (A173-A212). Defendant filed a Post-Conviction on March 5, 2005, with seven grounds based on ineffective assistance of counsel (A213-A231). On April 27, 2005 the Superior Court dismissed each claim (A232-A237). Defendant filed an Appeal to the Supreme Court on September 9, 2005 (A238-A271). The Supreme Court affirmed the Superior Court decision on April 13, 2006 (A272-A273). Defendant then filed Habeas Corpus.

## **ARGUMENT**

I. Ineffective assistance of counsel allowed the State to obtain a conviction through use of false evidence in the warrant affidavit, known to be false at time of affirmation and material to the judicial determination of probable cause. Napue v. Illinois Supra., Whiteley v. Wyoming 401 U.S. 560 (1971)

The Fourth Amendment to the United States Constitution and Article 1 section 6 of the Delaware Constitution require probable cause first be established, in order for a warrant to be issued. It is axiomatic that an application for a warrant be supported by a sworn affidavit that on its face shows facts constituting probable cause. Where police officer makes a false statement of a material fact in a warrant, the warrant is invalid and any evidence obtain pursuant to that warrant is inadmissible. Franks v. Delaware U.S. 154, 57 L.E.D. 2d.667 (1978)

On November 1, 1999 police arrested defendant without an arrest warrant, obtaining consent to enter defendants residence through a show of police force, intentionally falsifying the information in the warrant affidavit which impaired the independent judgment of a neutral and detached magistrate, having written documentation that victim was unable to recall the events of incident (A2, A3, A12-A22). A conviction obtained through the use of false evidence, known to be false by representatives of the state violates Due Process, even if the false testimony goes only to the credibility of witness and same result obtains when State though not soliciting false evidence allows it to go uncorrected when it appears. Yates v. State 629A2d 807 and DeBose v. Lefevre 619 F2d 973.

Under the Sixth Amendment a criminal defendant is entitled to the competent assistance of counsel. Counsel must function as elaborated in prevailing professional norms to make the adversarial testing process work in a particular case. Kimmelman v. Morrison 477 U.S. 365, 385, (1986), Franks v. Delaware 438 U.S. 154 (1978) and Delaware v. Prouse 440 U.S. 648, 654 (1979).

Defense counsel never filed a motion challenging the veracity of warrant's probable cause affidavit, having knowledge that the false information was necessary to a determination of probable cause; used at Preliminary Hearing and, to obtain a Grand Jury indictment. A review of the warrant affidavit and trial testimony of the affiant clearly supports defendant's argument that false information was given to

5

obtain the arrest. (Ex. A, A63, 64). No pre-trial identification of the defendant was given to police by the victim or any eye witness to the assault. The illegal arrest permeates the entire trial process. (A274-A276) Defendant wants to make clear that he is not arguing a minor inconsistency such as J.R. Copes as opposed to Alonzo Morris or mere suppression of his statement to police, but the argument before this court which the lower courts intentionally ignore is that the entire probable cause affidavit is false, the victim never made the statement contained therein and therefore police deliberately lied in order to justify defendants warrantless arrest. Defendant asks that the following be observed as facts of this case necessary to obtain conviction.

1) A curative instruction was requested by prosecutor James Adkins, that would insure the jury was not misled by defense into thinking Officer Davis illegally arrested the defendant.

   a) The trial court granted prosecutions request and gave a curative instruction on the defendant's arrests. (Ex. B, page 15)

2) Prosecution gave false information by way of testimony given by Officer Daniel Davis, the only witness presented to the Grand Jury, which relied upon the false material in the warrant affidavit. Prosecution intentionally misled the Grand Jury destroying its structural integrity; and,

3) Failure of defense counsel to challenge the veracity of the warrant affidavit denied the defendant's right to show prosecution intentionally under minded the Due Process of law.

Because there was no pre-trial identification, the initial prosecution was based solely upon false evidence. The structural defect in the institution of prosecution affected the frame work within which the trial proceeded and without which the trial could not reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment can be regarded a fundamentally fair. Lewis v. Pinchak 348 F.3d 355 (3rd Cir 2003) U.S. ex rel Mealey v. Delaware 352 F. Supp 349, Taylor v. Maddox 366 F. 3d. 992 (9th Cir 2004)

6

Therefore, defendant petitions the Court to remand this case back to the Superior Court for an evidentiary hearing, affording the defendant's right to have the trial court determine whether the prosecution knowingly ignored this blatant violation of law and to establish a record which allows a factual judicial finding on the merit of defendants argument. The fact established is that the defendant was arrested without an arrest warrant then police intentionally lied in the warrant affidavit of probable cause to obtain judicial determination justifying officer's warrantless arrest. Defendant asks this Court to look at the warrant affidavit and Officer Davis trial testimony. This is more than a conclusory allegation, it is established fact that the lower court and prosecution openly and blatantly disregard. The Delaware Supreme Court and trial court are applying the wrong standard of law in this case. It is not a matter of whether this illegality would have changed the outcome of trial but that this illegal act was essential for there to be a trial.

Exhibit B
Affidavit of Probable Cause

tate of Delaware vs ALONZO W MORRIS J          Police Complaint: 8199003617
lso known as: JR                                SBI Number: 00263971
ate of birth: 08/01/1972     Sex: M             Race: B      Accused's age: 27
yes: BRO     Hair: BLK     Height: 601          Weight: 165
ccused's home add: 23 DOUGLAS ST PO BOX        Social Security Number 220842385
                                                Driver's License DE - 1014746
          : GEORGETOWN, DE 19947
                                                Name, Home and Work Addresses, and
ccused's Home Ph : 3028567075                   Telephone Numbers of Next of Kin
                                                or Parent/Guardian
                                                : MARY WILSON
ccused's employer: SELF                         : SAME
          :                                     :
          :
                                                          : GEORGETOWN, DE 19947
cused's Emp Pho: 0                              Phone: 3028567075
ccused's Work Hr:                               Work :
                                                     :
                                                     :
lation: Vict to accused: OTHERWISE KNO          :

ctim's Age : 74
ctim's D.O.B. : 01/04/1925
te(s) and time(s) of offense: 11/01/1999 07:38
cation where offense occurred: 330 N. RACE ST GEORGETOWN DE 19947

Your affiant DANIEL DAVIS can truly state that: ON THE 11/01/1999 AT APPROX
730HRS THE GEORGETOWN POLICE WERE SUMMONED TO THE THREE HUNDRED BLOCK OF NOR
RACE ST IN REF TO AN ASSAULT. UPON THE POLICE ARRIVIAL THE VICTIM WAS CONTA
ED AND MADE A STATEMENT. MR. BIBBINS ( THE VICTIM) STATED THAT HE HAD BEEN I
AN ARGUMENT WITH ALONZO MORRIS OVER A PHONE CALL THAT MR. BIBBINS MADE TO MR
MORRIS'S GIRLFRIEND. THE ARGUMENT BECAME HEATED AND MR. MORRIS STRUCK MR. BI
NS IN THE HEAD WITH A P.V.C. PIPE. THE PIPE CAUSED A MASSIVE CONTUSION ON T
LEFT SIDE OF THE VICTIMS HEAD. WHILE IN ROUTE TO THE HOSPITAL THE VICTIM HA
O BE PLACED ON A VENTALATOR. AT THE HOSPITAL THE VICTIMS BRAIN BEGAN TO SWE
AND HAD TO BE FLOWN TO A WASHINGTON D.C. HOSPITAL FOR EMERGENCY OPERATION T
TOP THE SWELLING OF THE BRAIN. THE VICTIM WAS IN CRITICAL CONDITION AT THIS
ME.
===========================================================================

iant:
IEL DAVIS GEORGETOWN PD Phone Work

tims:
.S BIBBINS

_____
                      Affiant

rn and subscribed before me this 01 day of November A.D., 1999

Davis - Cross                          B-97

1    we will try to clean it up.  Maybe there is a better

2    copy that maybe the officer might have.

3    BY MR. LIGUORI:

4        Q    What I want to do, for purposes of your

5    testimony here, is ask you to go to the highlights of

6    Defendant's D for identification and -- I can't use

7    that red thing because it gave me a headache watching

8    you do it.  So I am going to do this.  I want you to

9    tell me -- you prepared this?  This is your signature;

10   is that right?

11       A    Yes, sir.

12       Q    The 1st of November, 1999?

13       A    Yes, sir.

14       Q    You have a copy in front of you?

15       A    Yes, I do.

16       Q    And the part that is shown, it talks about

17   Alonzo Morris?  This is the probable cause affidavit

18   for Alonzo Morris; is that right?

19       A    Yes, sir.

20       Q    And you state and, in fact, swear that upon

21   your arrival, the victim -- that's Mr. Bibbins; right?

22       A    Yes, sir.

23       Q    The victim was contacted and made a

Davis — Cross                                   B-98

1     statement; correct?

2          A     Yes, he did.

3          Q     Mr. Bibbins, the victim, stated that he had

4     been in an argument with Alonzo Morris?  Did he say

5     that?

6          A     Alonzo Morris, no.

7          Q     Did Mr. Bibbins say that?

8          A     No.

9          Q     He did not say that?

10         A     No.

11         Q     But you swore that he said that; correct?

12         A     Yes, I did.

13         Q     You swore that he said he was in an argument

14    with Alonzo Morris on a phone call that Bibbins made to

15    Mr. Morris' girlfriend?

16         A     Yes.

17         Q     That's not what Mr. Bibbins says, is it?

18         A     Mr. Bibbins said --

19         Q     I will let you rehabilitate yourself for

20    Mr. Adkins.  Just answer yes or no.

21              THE COURT:  He can answer yes or no and give

22    an explanation, Mr. Liguori.

23              MR. LIGUORI:  I apologize.

                                              A159

                    EILEEN G. KIMMEL
                    OFFICIAL COURT REPORTER

Davis - Cross

1    BY MR. LIGUORI:

2        Q    Did Mr. Bibbins say at the scene that the

3    argument was over Mr. Bibbins' making a phone call to

4    Mr. Morris' girlfriend?

5        A    Mr. Bibbins stated that the reason he was

6    assaulted was over a phone call from J. R.'s

7    girlfriend.

8        Q    I don't wanted to beat a dead horse.  You

9    look at this.  Who made the phone call?  I am a neutral

10   and detached Magistrate.  I am going to read this.  Who

11   made the phone call?

12       A    Mr. Bibbins.

13       Q    It is wrong; isn't it?

14       A    Yes, it is incorrect.

15       Q    You are incorrect, or is Mr. Bibbins

16   incorrect?

17       A    The statement was incorrect on the warrant.

18       Q    And who said Alonzo Morris?

19       A    Nobody did.  I did.

20       Q    So you then presented this document that had

21   inconsistencies in it?

22       A    Unfortunately so, yes, sir.

23       Q    Things that were not even said were in here;

11

                          Davis — Cross                    B—100

 1    correct?

 2        A    Yes.

 3             MR. LIGUORI:  At some point in time, I will

 4    give a clean copy.

 5             THE COURT:  I am not concerned with a clean

 6    copy or unclean copy.  It has been explained to the

 7    jury.

 8             MR. ADKINS:  I have no objection to that

 9    coming in.

10             THE COURT:  You want to move it?

11             MR. LIGUORI:  I do.  I would like to use that

12    one.  This is my personal one with notes on it.

13             MR. ADKINS:  That is my only one that I may

14    need.

15             MR. LIGUORI:  I will make a copy.

16             THE COURT:  Substitute it later.

17             MR. LIGUORI:  Thank you.

18    BY MR. LIGUORI:

19        Q    So how does it come that you, in your

20    investigation, decide unilaterally to put words in

21    Mr. Bibbins' mouth?

22        A    There is -- I have known Alonzo Morris to be

23    the person that Mr. Bibbins said it was.

                        EILEEN G. KIMMEL
                        OFFICIAL COURT REPORTER

                                12

Davis – Cross                    B-101

1      Q    How does it come that you put words in

2   Mr. Bibbins' mouth?

3      A    I don't put words in his mouth.

4      Q    You said that he said Alonzo Morris.

5      A    That's something that I generalized.

6      Q    Generalized for a Magistrate?

7      A    Yes, sir.

8      Q    To justify the fact that you already arrested

9   him without a warrant?

10     A    I had taken him in custody, yes.

11     Q    I can split hairs.  Was he going to leave?

12     A    No, sir.

13     Q    He was arrested, wasn't he?

14     A    I had taken him into custody, yes, sir.

15     Q    You then, to justify what you had done, went

16   to the Magistrate and inserted out of the mouth of the

17   victim, "Alonzo Morris"?

18     A    As I know him to be, yes, sir.

19     Q    Well, what is your job?  To do what you know

20   to be or to take down what victims or witnesses tell

21   you?

22     A    Both.

23     Q    Well, let's discuss that then.  In an

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER

13

II. Defense counsel's failure to investigate and introduce evidence or information that demonstrated false evidence was presented to the Grand Jury by police denied defendant effective assistance of competent counsel.

Trial counsel was ineffective in demonstrating that the State used false evidence to obtain the indictment in this case. Prior to the second trial, defense counsel moved to dismiss the indictment based on claims of double jeopardy and false evidence before the Grand Jury. During an evidentiary hearing, the trial prosecutor, James W. Adkins, Esq., Officer Davis and Barlow were questioned about the Grand Jury proceedings, specifically whether the Grand Jury was presented testimony regarding a photo line-up or probable cause affidavit. Officer Davis could not recall whether he had presented the case to the Grand Jury, but he testified that whenever he went to a Grand Jury he took with him the probable cause sheet and crime report (A274-A277). The prosecutor and Officer Barlow both denied having presented the case to the Grand Jury, and claim to have no idea who had done so. (A278-A281) Barlow also explained his testimony at Preliminary Hearing, when after having interviewed the witnesses from Harvey's Plumbing the day before the Preliminary Hearing, he had erroneously assumed Davis had shown a photo line-up to the witnesses. According to Barlow, there was no police report indicating a photo line-up had been shown to witness. (A281-A282) Defense counsel never established that Officer Barlow was the person who interviewed each of the witnesses from Harvey's Plumbing on November 3, 1999 one day prior to Preliminary Hearing. Audio tapes of these interviews were submitted by the State. At the close of this hearing defense counsel openly admits his inability to establish who was present at the Grand Jury preceding. (A283-A284) The Superior Court ruled that the use of probable cause affidavit that stated Alonzo Morris as opposed to J.R. or Gerald Copes did not raise to a level of a substantial misrepresentation (A285-A286) Underlying this ruling were unreasonable and illogical inference from witnesses' testimony that whomever had presented the case to the Grand Jury never presented Barlow's mistaken belief that a photo line-up was used to identify the defendant. Defendant's argument that the entire probable cause affidavit was false and prosecutor James Adkins Esq. testimony that no pre=trial identification were done were ignored by trial judge and appellant court in Post – Conviction proceedings. (A285-A286). See Morris v. State CR.A.No. 991100751 (R-1) and Morris v. State No. 215, 2005. A review of fact finding process clearly shows that counsels failure to properly present the court with factual information concerning defendants argument, that the indictment in this matter should be dismissed because the State used

erroneous and perjurious testimony before the Grand Jury in its successful attempt at returning a true bill of indictment denied counsel at a critical stage of the trial process. There was a constructive denial of counsel, i.e., when a lawyer entirely fails to subject the prosecutions case to meaningful adversarial testing. Counsel presented no evidence to support defendant's argument. Testimony may seem implausible standing alone, yet gain considerable force when confirmed in a material respect by an independent source or by objectively verifiable fact. Similarly, testimony may seem highly plausible, yet be discredited when it is shown to be irreconcilably in conflict with other evidence. Fact finding is the dynamic, holistic process that pre-supposes for its legitimacy that the tier of fact will take into account the entire record before it, therefore it is the defense counsels responsibility to present evidence that will afford the defendant a fair opportunity to have the evidence that demonstrates his client's factual innocence presented for the fact finders consideration. Without such requirement a defendant is left bare and completely without any of the safe guards provided under the 6th and 14th Amendment. To establish a violation of defendants 6th Amendment right to effective assistance of counsel, defendant must show (1) that counsel's performance fell below objective standard of reasonableness, and (2) the prejudice resulted.

U.S.C.A. Const. Amend. 6, Strickland v. Washington 466 U.S. 688,687-96 (1984)

In evaluating Strickland's first component, the Court will review defense counsels actions with the strong presumption "that, under the circumstances, the challenged action 'might be considered sound trial strategy'" (id at 689, 104 S.Ct. at 2065, quoting Michel v. Louisiana 350 U.S. 91, 101, 76 S. Ct. 158 (1995)) Defendant has shown by defense counsels own admission that he failed to adequately represent defendant in regard to the Grand Jury argument, this was outside the wide range of professionally competent assistance. As for the second element – prejudice flowing from defense counsels substandard performance, defendant was denied the opportunity to present evidence which shown a constant pattern of police and prosecutional misconduct undermining the integrity of the pretrial and trial process. Under Superior Court Criminal Rule 26.2 defendant was entitled to Officer Davis' Grand Jury testimony. This deprived defendant the opportunity to present evidence of police fabrication to the jury, failure of defense counsel to present a coherent argument on that issue took the question away from the jury and deprived the defendant a viable defense. Although defendant presented an alibi defense, the incompetent, ineffective assistance of counsel denied defendant an

15

opportunity to present the jury with evidence that showed the states chief investigator continued decision to under mind the legal process of law.

III. Failure of Defense counsel to object to the States use of office Davis as an expert witness in fingerprint analysis and the states refusal to provide defendant under Rule 16 (a) (1) (E), a written summary of testimony that the state intended to use in its case in chief on the expert opinion, identify of facts and data upon which Officer Davis based his opinion and reasoning upon, denied defendant a fair trial.

Federal Rule of Criminal Procedure 16 (a) (1) (E) and Delaware Rule 16 (a) (1) (E) are identical and obligate the State and Federal government to provide a criminal defendant with pre-trial discovery relating to expert witnesses. The state never provided defendant with any information on the tests done on the weapon and defense counsel failed to question whether or not Officer Davis was qualified as an expert in fingerprint analysis, whether Davis testified in any other trials as a fingerprint expert or to even require the trial court to insure that any and all scientific testimony was not only relevant but also reliable. Defense counsel failed to require the court honor basic gate keeping obligations applied to all expert testimony on scientific, technical or other specified matters within Rules of evidence 702, which is identical for both State and Federal Courts. Rule 16 (a) (1) (E) obligated the government to provide a criminal defendant with the pre-trial discovery relating to the experts witnesses qualifications to testify as an expert in forensic science. Davis's trial testimony revealed that no fingerprints of value had been lifted from the weapon.

On appeal to the Supreme Court of Delaware in the States answering brief it was argued that, "Morris overlooks the fact that this was a retrial, and counsel had the entire record from the first trial at his disposal" (States answering brief at pg. 15)

On direct examination, Officer Davis testified that he first processed the PVC pipe by fuming it in a heated chamber with super glue, but to no avail and then he dusted it with fluorescent powder, but still was unable to discern any latent fingerprints (A144-A164). Davis testified that even if there had been a fingerprint on the pipe, he doubted whether he would have been able to lift a latent print of the scarred surface of the old pipe. (A146)

16

Counsel was aware from the prior trial testimony and record that the police had not provided defense any information, tests, or examination results on fingerprint testing and counsels failure to see the factual advantage to having force the government to honor its obligation under Rule 16 (a) (1) (E) to provide defense with pre-trial discovery relating to Officer Davis' expert qualifications to testify as an expert in the forensic science of fingerprint analysis, denied defendant the right to counsel at a critical stage of his trial by relieving the States obligation to meet the threshold requirement necessary for admission of expert and or scientific testimony. Defense counsels failure to object and request the trial court prohibit testimony on ultimate jury issue denied defendant a fair trial. Officer Davis' testimony encroached upon the jury's fact finding function regarding the ultimate issue of whether or not defendant possessed the weapon presented at trial. Defendant was entitled to a mistrial due to the states failure to provide defense with discovery relating to Officer Davis's expert qualifications or opinion as an expert in the forensic science of fingerprint analysis. Officer Davis testimony pro-offered expert opinion that he doubted any latent prints was obtainable due to the scarred condition of the old pipe was inadmissible. (A146) This testimony related to a subject bearing directly upon the appropriateness of a jury inference and relieved the government's burden of proof. Officer Davis' testimony was intended to establish guilt, by justifying why defendant's fingerprints were not found on the weapon. Ultimately it was for the jury to decide whether government had met its burden of proof and the failure of defense counsel to object to a clear violation of Rule 16. Discoverable Material denied defendant his right to a fair trial and the effective assistance of counsel acting in the role of advocate, by requiring the State honor simple evidentiary obligations shows a clear denial of any meaningful adversarial testing.

IV. Defense counsel actively represented conflicting interests and actual conflict of interest required trial court inquire into conflict and failure to do so requires automatic reversal of conviction.

Trial counsel had a conflict of interest between himself and defendant that compromised his ethical obligation to represent defendant zealously, and the trial court failed to inquire into the conflict (A126). Melendez v. Carroll 2006 WL 38921 (D. Del), Gov. of Virgin Island v. Zepp 748 F. 2d 125 (3rd Cir.). Holloway v. Arkansas 435 U.S. 475 (1978)

On September 23, 2002 defense counsel James Liguori corresponded ex-parte with Superior Court
Judge T. Henley Graves, stating that defendant had intimated in a pro-se motion to the Supreme Court
of Delaware that Liguori and the Superior Court was in collusion to deprive him a fair trial. (see States
answering brief at pg 34; No. 215, 2005) Liguori requested an ex-parte hearing between the trial
judge, defendant and himself to determine whether there existed an ethical reason for him to request
removal from further representation of defendant. This hearing never took place.

To compel one charged with a grievous crime to undergo trial with the assistance of an attorney with
whom he has become embroiled in irreconcilable conflicts to deprive him of effective assistance of any
counsel whatsoever. Brown v. Craven 424 F. 2d. 1167 (9ᵗʰ Cir) An actual conflict of interests occurs,
when during this course of representation the attorney and defendants interests diverge with respect to
a material, factual or legal issue or to a course of action. Melendez v. Carroll 2006 WL 38921 (D. Del)
citing Gov. Virgin Islands v. Zepp 748 F. 2d. 125, 135 (3ʳᵈ Cir) Where the trial court fails to discharge
its duty to inquire into a known conflict of interest, such an error is a Constitutional defect that entitles
petitioner Habeas proceedings. The record is undisputed by the state that the counsel corresponded in
written form to the trial judge requesting ex-parte hearing on the conflict of interest between himself
and the defendant. The Sixth Amendment right to effective assistance of counsel provides for
representation that is free from conflicts of interests or divided loyalties. Zerbst. 304 U.S. 458, 464.
As a general rule, a defendant alleging ineffective assistance of counsel must demonstrate a reasonable
probability that but for counsels unprofessional errors the result of proceedings would have been
different, a reasonable probability sufficient to undermine confidence in the outcome of trial or a
conviction which resulted from a breakdown in the adversary process that rendered the result of
proceeding unreliable. Strickland v. Washington 466 U.S. at 694.

In certain Sixth Amendment context, a court will discharge a defendant's Strickland obligation to demonstrate a probable effect on the outcome and instead pressure prejudice. Cronic 466 U.S. at 658, 659. This presumption of prejudice arises in circumstances where:

> 1) there exists a complete denial of counsel at a critical stage of trial

> 2) defense counsel fails to subject prosecutions case to meaningful adversarial testing (Defendant has argued both in the previous arguments that failure to object to States continual use of false evidence in the probable cause affidavit, at Preliminary Hearing and during Grand Jury proceeding denied counsel at critical stage of trial process and failed to subject prosecution to meaningful adversarial testing)

> 3) Counsel is called upon to render assistant where competent, counsel very likely could not. Cronic 466 U.S. at 658, 659

This presumption also arises where defendant demonstrates that his attorney actively represented conflicting interests. Mickens v. Taylor 122 S. Ct. at 1241-1245. Where the defendant or his counsel objects to the conflict prior to or during trial; the trial court must inquire as to the extent of the conflict or subject any subsequent conviction to automatic reversal. Only in absence of an objection is showing of: 1) actual conflict and; 2) an adverse effect on counsel's performance required to void conviction. The Supreme Court of Delaware and the trial court make applicable a standard of law that totally ignores the direct correspondence sent by counsel to the trial judge who established he and defendant had become embroiled in a conflict of interests. This written document obligated the trial judge inquire into the extent of conflict and failure to do so requires automatic reversal of the defendants conviction.

19

# Liguori, Morris & Redding

**Attorneys At Law**
46 The Green, Dover, Delaware 19901
(302) 678-9900 • Fax (302) 678-3008



James E. Liguori
Gregory A. Morris
Laura A. Yiengst

September 23, 2002

Honorable T. Henley Graves
Resident Judge
Sussex County Superior Court
P. O. Box 746
Georgetown, DE 19947

> **Re:    Ex-Parte Communication**
> **State v. Alonzo W. Morris, Jr.**

Dear Judge Graves:

I've enclosed a portion of a pro se motion the above Defendant filed with the Supreme Court.

I'm troubled by the highlighted area of Page Three of his petition because not only is his assertion false, but he intimates that the court and I are somehow in collusion to prevent Defendant from a fair hearing and/or trial.

I truly believe that for Mr. Morris to make such an allegation against me and the court compromises my ethical obligation to act as his zealous attorney.

I can only see trouble ahead, if at this juncture, the Defendant is already resorting to lies and innuendo to our Supreme Court about my relationship with him and the court. I request an in camera hearing as soon as practical with the Defendant, myself and the court to determine whether there exists an ethical reason for me to request removal from further representation of th Defendant.

Respectfully submitted,

James E. Liguori

JEL:sec

Enclosure

cc:    Mr. Alonzo W. Morris, Jr.

(A-126)

20

V. Failure of Defense Counsel to object to the States use of false expert testimony denied defendant a fair trial.

During the first trial, the State called Dr. Carl Maschauer, the victim' eye doctor as a witness to testify about Bibbins' eyesight before and after the incident (A-287). Maschauer testified that on June 23, 1999, Bibbins had the best corrective visual acuity of 20/50 in his right eye, and 20/70 in his left eye (A-288). After the attack, Bibbins visited Dr. Maschauer at prosecutor James Adkins request, after victim stated in open court that he didn't see the person who attacked him in the courtroom the day before. On Marcy 13, 2000, the victim was asked to stand and look around the courtroom and see if he was able to identify the person he thought attacked him (A-289). The victim testified that he did not see the person who attacked him. On March 14, 2000 Prosecutor James Adkins has the victim see Dr. Carl Maschauer prior to trial and then presents Dr. Maschauer's testimony to explain to the jury why the victim failed to identify the defendant as his attacker (A-290-291). Dr. Maschauer testimony was material to the prosecutions case. Maschauer states during the second trial which took place in 2002 that the victim was seen by him in May 1999, and had visual acuity of 20/50 in his right eye and 20/40 in his left eye (A-292). Maschauer testified that the victim was seen by him on January 19, 2000 and had no vision in his right eye and visual acuity of 20/50 in his left eye (A-292).

Trial counsel was ineffective in failing to object to Maschauer's false testimony. The victim's visual acuity was a central issue for prosecution. The record is clear, there are discrepancies between Dr. Maschauer's testimony at the two trials and failure of prosecution and defense to notice at the time or call it to the courts attention denied the defendant the opportunity to have the expert testimony removed from the record or have the State disqualify Dr. Maschauer as an expert witness. Defense counsel's failure to object to the false testimony, denied defendant effective assistance of counsel at a critical stage in the trial. The State relies upon Maschauer's testimony to justify Bibbins failure to identify the defendant and also testimony that his vision improves to support a reliable in-court identification at the second trial. Dr. Maschauer's testimony was material and the failure of counsel to notice any discrepancy between Maschauer's first trial and second trial testimony or call it to the courts attention and request a mistrial denied the defendant a fair trial.

## CONCLUSION

Defendant Morris respectfully moves this court to vacate and set aside his conviction for Assault 1st and Possession of a deadly weapon during the Commission of a Felony due to ineffective assistance of counsel. Defense counsels failure to object to the States Chief Investigator's false statement in the probable cause affidavit, the use of this false document to obtain the Grand Jury Indictment and the undisclosed expert testimony by way of this unqualified expert in the forensic science of fingerprint and analysis encroached upon jury's fact finding function regarding the ultimate issue of guilt.

The failure of defense counsel to object to the States use of Dr. Maschauer's conflicting testimony concerning the victim's visual acuity allowed the prosecution's case to be supported by testimony it knew to be false. Collectively this illegalities warrant reversal of defendant's conviction. Moreover, once defense counsel had forwarded written correspondence to the trial Judge, stating that he, and the defendant had become embroiled in a conflict of interest, and the trial court failed to give the defendant an opportunity to show that a potential conflict impermissibly imperiled his right to a fair trial, the 6th Amendment requires automatic reversal for trial courts failure to conduct inquiry after a timely objection by defense counsel was made prior to trial. Counsels deficient performance prejudiced defendant resulting in an unreliable, fundamentally unfair outcome of the entire trial process.

Defendant petitions this Honorable Court to review each argument individually and collectively. Each argument was based upon clear violation of State and Federal law, each violation was material to the prosecution of case and subsequent conviction. Petitioner asks that he be given a remand to the trial court for an evidentiary hearing if this Court requires a more extensive record on each issue.

Respectfully submitted,

*Alonzo Morris*

Alonzo W. Morris #263971
Delaware Correction Center
1181 Paddock Road
Smyrna, DE  19977

## **VERIFICATION**

I, Alonzo Morris, hereby declare under penalty of perjury that the facts stated in the foregoing
memorandum are true and correct.

Dated: _4/26/07_

By: _Alonzo Morris_

Alonzo Morris



STANDARD
MAIL

Alonzo Morris, Jr.
SBI # 263971
D.C.C.
1181 Paddock Road
Smyrna, DE 19977

TO: Honorable Judge Gregory M. Sleet
United States District Court
844 N. King Street
Lock Box 18
Wilmington, DE 19801-3570

STANDARD
MAIL