## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **ALONZO MORRIS, JR.,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ.Act.No. 07-194-GMS |
| | ) |
| **THOMAS CARROLL**, Warden | ) |
| and **JOSEPH R. BIDEN, III**, Attorney | ) |
| General for the State of Delaware | ) |
| | ) |
| Respondents. | ) |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. §

2254, respondents state the following in response to the petition for a writ of habeas

corpus:

In March 2000, the petitioner, Alonzo Morris, Jr. was convicted in a Delaware

Superior Court jury trial of first degree assault and possession of a deadly weapon during

the commission of a felony. *Morris v. State*, 795 A.2d 653, 656 (Del. 2002) (*Morris I*).

Morris was subsequently sentenced to ten years imprisonment on the assault conviction,

twenty years imprisonment on the weapons conviction, and three months imprisonment

for a related violation of probation charge. *Id.* at 656-57.

The Delaware Supreme Court, in *Morris I*, described the circumstances of Morris'

crime:

> Between 7:35 a.m. and 7:40 a.m. on November 1, 1999, a man
> approached James Bibbins as Bibbins rode his bicycle on his way to
> work on North Race Street in Georgetown, Delaware. Bibbins stopped
> his bicycle and the man told Bibbins that he had wanted to meet him so
> he could beat him up. The man then said that Bibbins had "disrespected"

him during a phone conversation. Bibbins responded: "I don't see how I disrespected you, I didn't even talk to you." When Bibbins resumed his commute to work, the man threw a rock at him. The man then picked up a piece of pipe, ran after Bibbins, and struck him in the head with the pipe. The blow broke several bones in Bibbins' head and tore the optic nerve in his right eye. The assailant then ran away around a street corner.

*Morris I*, 795 A.2d at 656. The Delaware Supreme Court reversed Morris' conviction in March 2002.[1]    *Morris I*, 795 A.2d at 659-61. Morris was retried and convicted in November 2002. *Morris v. State*, 2006 WL 988041 at *1 (Del. 2006) (Ex. A) (*Morris II*); *See* Super. Ct. Crim. Dkt. #9911000751, D.I. 106, 111. The Delaware Supreme Court affirmed Morris' convictions in March 2004. *Morris v. State*, 2004 WL 439881 (Del. 2004) (*Morris III*) (Ex. B).

In March 2005, Morris filed a motion for postconviction relief, alleging that his attorneys had rendered constitutionally defective representation during both his first and second trials. Morris' motion was denied by Superior Court in April 2005. *See State v. Morris*, Del. Super., ID No. 991100751 (R-1), Graves, J. (Apr. 27, 2005) (Ex. C). The

---

[1] Morris' convictions were reversed because the prosecutor made improper remarks during closing argument. During closing, the prosecutor remarked:

How many liars are we going to have to have in this case for [Morris] to be not guilty? Well, you'd better be satisfied that James Bibbins is lying when he says he knows who did this to him and that it's J.R. It's J.R. Copes. You'd better be satisfied that James Bynum, who's known him since he was a baby boy, that he's lying, when there has been no reason to think that James Bynum has any type of motive to lie against J.R. Morris....

You'd better be satisfied that Rick Hughes is lying when he identifies [Morris] as the one who hit Mr. Bibbins. You'd better be satisfied that Lenora Middleton is lying. You'd better be satisfied that Joyce Bailey is lying. For [Morris] to be not guilty, there has to be all of these amazing coincidences and all these liars....

*Morris I*, 795 A.2d at 659-60 (footnote omitted).

Delaware Supreme Court, affirming the judgment of the Superior Court, held that Morris'
claims were without merit. *See Morris*, 2006 WL 988041.

Discussion

To the extent that Respondents are able to discern, petitioner raises one ground for
relief: his counsel was ineffective in a variety of ways. Because Morris has raised his
ineffectiveness claims before the Delaware Supreme Court, each has been properly
exhausted. Morris, however, is not entitled to relief because the claims presented in his
petition are untimely under 28 U.S.C. §2244(d) and are, additionally, without merit. To
the extent that Morris has raised claims not specifically addressed here, they are without
merit.

Because Morris' petition was filed in April 2007, it is subject to the Antiterrorism
and Effective Death Penalty Act ("AEDPA") signed into law on April 24, 1996. *See
generally Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that AEDPA applies to
"such cases as were filed after the statute's enactment."); *Lawrie v. Snyder*, 9 F. Supp.2d
428, 433 n. 1 (D.Del. 1998). Under 28 USC §2244(d)(1)(A), therefore, Morris' federal
habeas petition must have been filed within one year of the date that Morris' convictions
became final.[2] The Delaware Supreme Court affirmed Morris' conviction and sentence
in March 2004. *See Morris II*. Thus, Morris' petition must have been filed by June 2005
to be timely. Morris' petition was obviously filed beyond the one-year limitations period.
The petition is thus untimely and must be dismissed, unless the time period can be
statutorily or equitably tolled. *See Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).

---

[2] Morris does not allege, nor can respondents discern, any reason to believe that the terms
of 28 U.S.C. §2244(d)(1)(B)-(D) are applicable.

3

The tolling mechanism of §2244 cannot save Morris' petition from the running of the limitations period. *See* 28 U.S.C. §2244(d)(2). When applicable, §2244(d)(2) tolls the one-year period of §2254(d)(1) during the time that a properly filed state postconviction action is pending in the state courts. Section 2244(d)(2) provides only that the limitations period is tolled for the time that a motion for state postconviction relief is pending, but it does not stop the limitations clock from running until all state postconviction motions are decided. *See Marvel v. Dep't of Correction*, Civ. Act. No. 97-568-LON, order at ¶9 (D.Del. Nov. 17 1998). Morris filed a motion for postconviction relief under Delaware Superior Court Criminal Rule 61 on March 4, 2005, 366 days after his conviction was affirmed by the Delaware Supreme Court in *Morris III. See* Super. Ct. Crim. Dkt. #9911000751, D.I. 154. Further, Morris waited until April 5, 2007 to file this petition[3], 357 days after the Delaware Supreme Court affirmed the Superior Court's denial of his motion for postconviction relief. *See Morris II*, 2006 WL 988041. Accordingly, Morris' petition is untimely by at least 358 days. Thus the statutory tolling provisions of §2244(d)(2) are of no aid to Morris.

Of course, as the Court has repeatedly noted, the limitation period might be subject to equitable tolling. *See, e.g., Thomas v. Snyder*, 2001 WL 1555239, at *3-4 (D.Del. Nov. 28, 2001) (Ex. D) (describing rule). Equitable tolling, however, applies only where the petitioner "has in some extraordinary way been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998). Here, Morris has failed to allege or demonstrate any extraordinary circumstances that prevented him from filing his petition with the Court in a timely

---

[3] Morris' original petition, docketed on April 5, 2007, is undated. Respondents, therefore, are unable to discern when Morris mailed his petition.

4

manner. Morris has raised each of the claims he advances here several times before the state courts. Accordingly, Morris cannot credibly allege that the legal arguments or facts were unavailable to him during the limitations period. In short, Morris' claims are untimely under §2244(d), and there is no basis upon which any relevant time should be excluded by virtue of the equitable tolling doctrine. Accordingly, the petition is untimely and must be dismissed. *See Miller v. Marr*, 141 F.3d 976, 977-78 (10th Cir. 1998).

Alternatively, Morris has failed to show that he is entitled to relief on the merits. As explained by the Third Circuit, a federal court's consideration under §2254(d)(1) of a habeas petitioner's claim proceeds in two steps. The court "must first identify the applicable Supreme Court precedent and determine whether it resolves the petitioner's claim." *Werts v. Vaughn*, 228 F.3d 178, 197 (3d Cir. 2000). *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). To do so, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Werts*, 228 F.3d at 197. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) ("A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous."). Thus, if the Supreme Court has not established "a clear or consistent path" of jurisprudence for state courts to follow, the prisoner is not entitled to relief. *Lockyer*, 538 U.S. at 72. When looking to Supreme Court precedent, the court "must decide the level of specificity at which [it] decide[s] whether the state decision is contrary to, or unreasonably applies, that precedent. . . . Supreme Court jurisprudence addressing §2254(d)(1) has established that determining the 'clearly established' benchmark should

be done on a case-specific level." *Fischetti v. Johnson*, 384 F.3d 140, 148 (3d Cir. 2004). Under §2254(d)(1), "the Court views its precedents in their particular factual settings. The touchstone precedents are not to be examined by looking to broad pronouncements or generative principles in the opinion.     The 'materially indistinguishable' test presupposes a fact-specific analysis of the Supreme Court case law." *Fischetti*, 384 F.3d at 148 (citing cases).

"If [the court] determine[s] that the state court decision is not 'contrary to' the applicable Supreme Court precedent, then [the court is] required to advance to the second step in the analysis -- whether the state court decision was based on an 'unreasonable application of' Supreme Court precedent." *Werts*, 228 F.3d at 197.   In performing this inquiry, the court is "not authorized to grant habeas corpus relief simply because [it] disagree[s] with the state court's decision or because [it] would have reached a different result if left to [its] own devices." *Werts*, 228 F.3d at 197.   Instead, the state court's application of Supreme Court precedent must have "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Werts*, 228 F.3d at 197. And as with the inquiry under the "contrary to" prong of the statute, "in analyzing habeas claims for unreasonable application of the law, the Supreme Court has looked at its own baseline precedents through a sharply focused lens." *Fischetti*, 384 F.3d at 149.  The decisions of state and lower federal courts are relevant in assessing the reasonableness of the state court decision at issue, but "cases not decided by the Supreme Court do not serve as the legal benchmark against which to compare the state decision." *Fischetti*, 384 F.3d at 149.     Finally, in this context, Supreme Court precedent involving the interpretation of federal statutes is not enough; the relevant body of decisional law is that

interpreting the federal Constitution. *Early v. Packer*, 537 U.S. 3, 10 (2002) (Court's holdings on non-constitutional issues are not "relevant to the §2254(d)(1) determination"); *Johnson v. Carroll*, 369 F.3d 253, 259-62 (3d Cir. 2004).

*Claim One: Ineffective assistance of counsel*

Morris claims that his attorney provided constitutionally defective assistance. As far as respondents can discern, Morris claims that his attorney was ineffective because counsel: a) "never filed a motion challenging the veracity of the warrant's probable cause affidavit"    (D.I. 3,   at 4);   b) "fail[ed] to investigate and introduce evidence or information that demonstrated that false evidence was presented to the grand jury by police" (D.I. 3, at 13); c) "fail[ed] to object to the States [sic] use of office [sic] Davis as an expert witness in fingerprint analysis and the states [sic] refusal to provide defendant under Rule 16(a)(1)(E), a written summary of testimony" (D.I. 3 at 15);  d) "actively represented conflicting interests and actual conflict of interest," and e) failed "to object to the States [sic] use of false expert testimony." (D.I. 3 at 16).  To the extent that Morris raises other claims of ineffectiveness not specifically addressed here, they are without merit.

To prevail on a claim of ineffective assistance of counsel, Morris must establish that (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. *Strickland*, 466 U.S. at 687-88; *Wells v. Petsock*, 941 F.2d 253, 259 (3d Cir. 1991). The *Strickland* standard is "clearly established" for purposes of the AEDPA deference standard, 28 U.S.C., § 2254(d). *Williams v. Taylor*, 529 U.S. 362, 391, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *See Gattis v. Snyder*, 278 F.3d 222, 236 (3d

Cir. 2002); *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 434-35 (D.Del. 1998). A habeas petitioner must allege facts which, if accepted as true, would satisfy both prongs of the *Strickland* test: deficient performance and prejudice to the defense. *See Wells*, 941 F.2d at 259-60; *cf. Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996).

Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689. Thus, to sustain an ineffectiveness claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Strickland,* 466 U.S. at 693, 696. *Wells*, 941 F.2d at 259-60; *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). "Where prejudice is lacking, the court need not determine whether the performance was subpar." *Marshall v. Hendricks*, 307 F.3d 36, 86 (3d Cir. 2002). Against this backdrop, Morris has not established that the state court's decision warrants relief under § 2254. Morris has simply failed to state what prejudice he suffered by his attorneys' alleged omissions.

*a. Failure to file a motion "challenging the veracity of the warrant's probable cause affidavit"*

Morris first claims that his attorney was ineffective for failing to file a motion "challenging the veracity of the warrant's probable cause affidavit." (D.I. 3 at 4). Morris' attorney questioned Officer Davis extensively on cross-examination regarding his statements in the affidavit of probable cause. (D.I. 3 at 8). Thus, Morris' counsel more than adequately challenged the veracity of the affidavit of probable cause at trial. Further, Morris does not state what filing a motion would have accomplished. "An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution." *United States v. Crews*, 445 U.S. 463, 474 (1980). Thus, even assuming, *arguendo*, that

Morris' arrest was illegal, he could have realized no benefit from filing any motion unless some evidence used at trial was seized. Morris does not identify what, if any, evidence was seized at the time of his arrest. Accordingly, Morris is not entitled to relief on this claim.

### b. "False evidence" presented to the grand jury

Morris argues that trial counsel was ineffective in failing to "demonstrate[e] that the State used false evidence to obtain the indictment in this case." (D.I. 3 at 13). According to Morris, the State presented false evidence to the grand jury, specifically, false testimony that the defendant had been identified by witnesses via a photo line-up. He claims that trial counsel's failure to "establish who was present at the grand jury proceeding" amounted to ineffective assistance of counsel.    (D.I. 3 at 13).    Morris, however, is unable to demonstrate either unreasonable conduct by counsel or prejudice.

Prior to the second trial, counsel moved to dismiss the indictment based on claims of double jeopardy and false evidence before the grand jury.  (A-56-59).[4]  During an evidentiary hearing, the trial prosecutor, James W. Adkins, Esq., and Officers Davis and Barlow were questioned about the grand jury proceedings, specifically whether the grand jury was presented with the affidavit of probable cause and testimony regarding a photo line-up.  (A-78-96).  Officer Davis could not recall whether he had presented the case to the grand jury, but he testified that whenever he went to a grand jury, he took with him the probable cause sheet and crime report.  (A-89, 91-92).  The prosecutor and Officer Barlow both denied having presented the case to the grand jury, and they had no idea who had done so.  (A-78-79, 94-95).  Barlow also explained the mistake he had made at

---

[4] All references to A- and B- refer to the respective appendices filed by the parties in *Morris v. State*, 2006 WL 988041 (Del. 2006).

the preliminary hearing when, after having been briefed by Davis, he had erroneously assumed that Davis had shown a photo lineup to witnesses. (A-95-96). According to Barlow, there was no police report indicating that a photo lineup had taken place. (A-96).

At the close of this hearing, the Superior Court ruled that the use of a probable cause affidavit that used the name Alonzo Morris as opposed to J.R. Copes[5] did not rise to the level of a substantial misrepresentation. (A-97-98). Underlying this ruling were the reasonable and logical inferences from the witnesses' testimony that Davis was the officer who presented the case to the grand jury, and that the grand jury never learned of Barlow's mistaken belief that Davis had used a photo lineup to identify the defendant as the assailant. *See, e.g. United States v. Castro*, 908 F.2d 85, 89 (6th Cir. 1990). Morris does not state what more his attorneys could have done to determine who was present at the grand jury proceeding, or how this information would have aided his defense. Given Morris' shortcomings in this regard, he has not made out a claim of ineffective assistance. *See Strickland*, 466 U.S. at 693. Therefore, Morris cannot show that trial counsel was ineffective in failing to adequately investigate and present evidence concerning these claims.

*c. Fingerprint Testimony*

Morris next claims that trial counsel failed to object to the State's use of expert testimony concerning fingerprint analysis. According to Morris, counsel was ineffective for failing to move the trial court to suppress the fingerprint analysis because the State failed to proffer a report of the expert's findings in discovery. (D.I. 3 at 16). This argument, however, is unavailing.

---

[5] A review of the record indicates that Morris was also known by the alias J.R. Copes. (B-133, 138, 153, 156-57, 160, 164-65, 172-73, 182).

Morris overlooks the fact that this was a retrial, and counsel had the entire record from the first trial at his disposal. On direct examination, Officer Davis testified that he first processed the PVC pipe by fuming it in a heated chamber with Super Glue, but to no avail. He then dusted it with fluorescent powder, but still was unable to discern any latent fingerprints. (A-158-160). Davis testified that even if there had been a fingerprint on the pipe, he doubted whether he would have been able to lift the print off the scarred surface of the old pipe. (A-160). On cross-examination, defense counsel questioned Davis about his prior sworn testimony and elicited the fact that Davis had previously failed to mention any fuming test. (A-162-63). It was the defense who subsequently called Russell McNatt, the fingerprint section supervisor for the State Bureau of Identification, who testified that it should have been possible to lift fingerprints from the surface of that pipe. (A-165-68).

Defense counsel was aware from the prior trial testimony and record that the police had not found any fingerprints on the pipe and, most likely, defense counsel saw no tactical advantage to having the pipe tested by another expert. Further testing might have uncovered evidence to the defendant's disadvantage, such as the defendant's fingerprints, while the tactic of attacking police methods and credibility would call into question their investigative efforts without any collateral damage to the defense. Morris has failed to demonstrate trial counsel was ineffective in not objecting to Davis' testimony on the basis of an alleged discovery violation. Nor has he shown any prejudice since Morris has not alleged (or substantiated) what other evidence trial counsel should have presented to show that Morris never possessed the weapon.

*d. Trial Counsel's Conflict of Interest*

Morris claims that trial counsel had a conflict of interest that compromised his ethical obligation to represent Morris zealously, and which the trial court failed to inquire into. The Delaware Superior Court summarily denied this claim, ruling that trial counsel had done a fine job, and there was nothing to support Morris' conclusory allegation that he had not been a zealous advocate. *See State v. Morris,* Del. Super., ID No. 991100751 (R-1), Graves, J. (Apr. 27, 2005). Morris has failed to demonstrate that counsel had any conflict of interest that adversely affected his ability to perform on behalf of his client.

The record shows that in open court on September 6, 2002, trial counsel informed the Superior Court judge that his client had just accused him of lying, and counsel requested an *ex parte* meeting. (A-100-01). The judge cleared the courtroom, and heard trial counsel state that he would zealously represent Morris, but he would not "put up with" a client accusing him of lying. (A-102-03). The Superior Court judge heard from Morris, who asked that justice be done. (A-105). The judge explained why he had appointed Liguori as Morris' attorney, and admonished both to be respectful with each other. (A-105-06). On September 23, 2002, Liguori corresponded *ex parte* with the Superior Court judge, stating that Morris had intimated in a *pro se* motion to the Delaware Supreme Court that Liguori and the Superior Court were in collusion to deprive him of a fair trial. (A-117). Liguori requested an *ex parte* hearing to determine whether there existed an ethical reason for him to request removal from further representation. (A-117). There is nothing in the record, however, to indicate that such a hearing took place.

There is also nothing in the record to suggest that an actual conflict of interest existed between Morris and Liguori. Morris points to no evidence other than the letter of September 23, 2002. Presumably, the Superior Court judge saw no reason to hold

another *ex parte* hearing on what was, essentially, a repetition of Liguori's earlier complaint about his disagreements with his client's conduct. The fact that Liguori continued to represent Morris effectively throughout his second trial -- since none of Morris' present claims individually or collectively amount to ineffective assistance of counsel -- demonstrates that there was no irreconcilable breakdown in the attorney-client relationship. The Sixth Amendment does not guarantee a "meaningful relationship" between an accused and his counsel. *See Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). Nonetheless, counsel owes a duty of loyalty to his client, that is, an obligation to avoid actual conflicts of interest that would adversely affect his ability to perform on behalf of his client. Even if there is proof of animosity between an attorney and client, prejudice is not presumed; a defendant must still show a direct connection between the animosity expressed by counsel and the actions of counsel taken on behalf of his client. 3 W. LaFave, J. Israel, and N. King, CRIMINAL PROCEDURE §11.9(d), at 698-99 (2d ed. 1999).

Morris' case did not involve an attorney who had undertaken joint representation, *see, e.g., Lewis v. State*, 757 A.2d 709 (Del. 2000), or who had tried to insulate himself from a subsequent claim that he rendered deficient service to a client. *See, e.g., MacDonald v. State*, 778 A.2d 1064, 1073 (Del. 2001) (counsel permitted defendant to surrender his right to postconviction relief). Liguori simply expressed concern, on two separate occasions, that Morris distrusted him. The duty of loyalty does not encompass an interpersonal relationship. Morris has failed to show an actual conflict of interest adversely affected the outcome of his case. Therefore, Morris' claim should be dismissed.

*e. Failure to Object to False Expert Testimony:*

Morris claims that his attorney was ineffective for failing to object to the prosecution's use of "false expert testimony." (D.I. 3 at 19). During the first trial, the State called Dr. Carl Maschauer, Bibbins' eye doctor, as a witness to testify about Bibbins' eyesight before and after the incident. (A-179). Dr. Maschauer testified that on June 23, 1999, Bibbins had the best corrective visual acuity of 20/50 in his right eye, and 20/70 in his left eye. (A-180). After the attack, Bibbins visited Dr. Maschauer on January 19, 2000; he was unable to see anything out of his right eye, and the best corrective visual acuity in his left eye was 20/70. (A-181-82). In the second trial, which took place in 2002, Dr. Maschauer testified that when Bibbins was seen in May 1999, he had vision acuity of 20/50 in his right eye and 20/40 in his left eye. (A-192). After the attack, on January 19, 2000, Maschauer testified that Bibbins had no vision in his right eye, and his left eye had 20/50 visual acuity. (A-193).

Morris now argues that trial counsel was ineffective in failing to object to Dr. Maschauer's false testimony, contending that Bibbins' visual acuity was a central issue to both prosecution and defense. He claims that the State sent Bibbins for an eye exam and presented false testimony to the jury to justify the failure of the victim to identify Morris as the attacker at the first trial.

Although the record shows a discrepancy in Dr. Maschauer's testimony at the two trials, Morris has not established that the inconsistency was due to anything other than an inadvertent mistake or misstatement by Dr. Maschauer. The State had provided trial counsel with Dr. Maschauer's records (A-195), but neither the prosecutor nor defense counsel apparently noticed any discrepancy at the time or called it to the court's attention.

14

Even if trial counsel was unreasonable in failing to notice the difference in Dr. Maschauer's testimony, Morris cannot show any prejudice. Bibbins had retinal problems, glaucoma, and tunnel vision in addition to his blindness in one eye. (A-192). During the second trial, Bibbins testified that that his eyesight in his left eye had improved, and he explained that the previous hearing had taken place in a different room and people had been sitting in different places. (A-104). Given this testimony, the State did not have to rely upon Dr. Maschauer's testimony to justify the fact that Bibbins could now identify his assailant when before he could not. Indeed, the State only called Dr. Maschauer to prove the element of serious physical injury. (A-190). Thus, Morris has failed to satisfy the prejudice prong of *Strickland*, and the state courts' rejection of this claim was reasonable.

### Conclusion

Based upon the Superior Court docket sheet, it appears that transcripts of Morris' preliminary hearing, first and second jury trials, evidentiary hearings, and first and second sentencings have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612

DATE: August 28, 2007

Westlaw.

900 A.2d 101                                                                                          Page 1
900 A.2d 101, 2006 WL 988041 (Del.Supr.)
**(Cite as: 900 A.2d 101)**

H
Morris v. State
Del.Supr.,2006.
(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
Alonzo MORRIS, Jr., Defendant Below-Appellant,
v.
STATE of Delaware, Plaintiff Below-Appellee.
No. 2152005.

Submitted: Jan. 27, 2006.
Decided: April 13, 2006.

Court Below-Superior Court of the State of Delaware in and for Sussex County, Cr. ID No. 9911000751.

Before HOLLAND, JACOBS and RIDGELY, Justices.

*ORDER*

JACOBS, Justice.
*1 This 13th day of April 2006, upon consideration of the briefs on appeal and the record below, it appears to the Court that:

(1) The defendant-appellant, Alonzo Morris, Jr., filed an appeal from the Superior Court's April 27, 2005 order denying his motion for postconviction relief pursuant to Superior Court Criminal Rule 61. We find no merit to the appeal. Accordingly, we AFFIRM.

(2) In November 2002, Morris, on retrial, was found guilty by a Superior Court jury of Assault in the First Degree and Possession of a Deadly Weapon During the Commission of a Felony.[FN1] Morris' convictions and sentences were affirmed by this Court on direct appeal.[FN2]

> FN1. Morris' original convictions were reversed by this Court in *Morris v. State,* 795 A.2d 653 (Del.2002).

> FN2. *Morris v. State,* Del.Supr., No. 21, 2003, C.J., Steele (Mar. 3, 2004).

(3) In this appeal, Morris claims that his trial counsel provided ineffective assistance by failing to: a) move to suppress his statement to police on the ground that there was no probable cause for his arrest; b) properly investigate the State's use of false evidence to obtain an indictment; c) present evidence that his counsel in his first trial improperly failed to move for a mistrial on the ground of prosecutorial misconduct; d) object to the State's use of improperly suggestive techniques to elicit his in-court identification; e) object to improper jury instructions; f) object to testimony by the State's expert regarding the results of fingerprint testing; and g) object to false testimony by an eye doctor regarding the victim's visual acuity. Finally, Morris claims that his trial counsel was ineffective due to a conflict of interest.

(4) In order to prevail on his claims of ineffective assistance of counsel, Morris must show that his counsel's representation fell below an objective standard of reasonableness and that, but for his counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different.[FN3] Although not insurmountable, the Strickland standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." FN4 This Court consistently has held that a defendant must set forth concrete allegations of actual prejudice and substantiate them, or risk summary dismissal.[FN5]

> FN3. *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984).

> FN4. *Flamer v. State,* 585 A.2d 736, 753 (Del.1990).

> FN5. *Younger v. State,* 580 A.2d 552, 555-56 (Del.1990).

(5) Morris' first claim is that his counsel was inef-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.


Ex. A.

900 A.2d 101
900 A.2d 101, 2006 WL 988041 (Del.Supr.)
**(Cite as: 900 A.2d 101)**

Page 2

fective by failing to move to suppress his statement to police on the ground that there was no probable cause for his arrest. At trial, two eyewitnesses, including the victim of the assault, identified Morris as the perpetrator. In addition, two other witnesses confirmed the victim's identification of Morris as the perpetrator immediately following the attack. In light of the overwhelming evidence against Morris, we conclude that there is no reasonable probability that the outcome of the trial would have been any different had his statement to police been suppressed.

(6) Morris next claims that his counsel was ineffective by failing to demonstrate that the State had relied on a false affidavit of probable cause and false testimony about a photo lineup to obtain his indictment. The record reflects that, at an evidentiary hearing prior to Morris' second trial, a police officer who had testified before the grand jury stated that he mistakenly assumed Morris had appeared in a photo lineup shown to witnesses. At the close of the evidentiary hearing, however, the trial judge ruled that the grand jury had not heard any evidence concerning a photo lineup. The judge also ruled that, while the affidavit of probable cause contained an error regarding Morris' name, the error was minor and did not undermine the reliability of the affidavit of probable cause. There was no error on the part of Morris' counsel in not pursuing this issue at the second trial and no evidence of any prejudice to Morris with respect to this claim.

*2 (7) Morris' third claim is based upon his contention that his counsel in his second trial should have presented evidence showing that his counsel in his first trial improperly failed to move for a mistrial on the ground of prosecutorial misconduct due to "collusion" with the prosecutor. There is no factual support in the record for this claim. We find no error on the part of Morris' counsel in not pursuing this issue at the second trial and no evidence of any prejudice to Morris with respect to this claim.

(8) Morris' fourth claim that his counsel failed to object to impermissibly suggestive techniques by the State to elicit his in-court identification is

without any factual basis. The record reflects that, at trial, Morris was identified by the victim and another eyewitness to the attack. There is no evidence that the State engaged in any improperly suggestive acts that would have tainted these identifications. Because Morris has failed to show that any error on the part of his counsel resulted in prejudice to him with respect to this claim, it, too, must fail.

(9) Morris' fifth claim is that his counsel failed to object to the trial judge's improper jury instructions, in particular the instruction that a police officer may effect an arrest for a felony without an arrest warrant. Given the overwhelming evidence identifying Morris as the attacker, we find that Morris has failed to demonstrate that, even if the instruction had not been given, the outcome of the trial would have been any different.

(10) As his sixth claim, Morris argues that his counsel improperly failed to object to the State's expert's testimony regarding the results of fingerprint testing on the PVC pipe that was used in the attack. Specifically, Morris argues that, because the State did not disclose the opinion of its fingerprint expert prior to his first trial, the defense was not able to have the pipe tested by its own expert. The record reflects, however, that at Morris' first trial the State's expert testified that he was not able to lift any fingerprints from the pipe. There was no reason for Morris' counsel to object to that testimony, since it was favorable to Morris. Because Morris can show no error on the part of his counsel that resulted in prejudice to him, this claim also must fail.

(11) Morris next claims that his counsel failed to object to false testimony given by an expert witness for the State. Specifically, he argues that the victim's eye doctor lied about the victim's vision in order to explain why he was unable to identify Morris at the first trial, but was able to identify him at the second trial. The record reflects that there was a discrepancy between the eye doctor's testimony at the first trial and his testimony at the second trial. However, because the victim himself testified that the vision in his left eye, which was impaired as a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

900 A.2d 101
900 A.2d 101, 2006 WL 988041 (Del.Supr.)
**(Cite as: 900 A.2d 101)**

Page 3

result of the attack, had improved since the first trial, the eye doctor's testimony was not needed in order to explain why the victim was now able to identify Morris in court. Morris has not demonstrated that any error on the part of his counsel resulted in prejudice to him with respect to this claim.

*3 (12) Morris' final claim is that his counsel had a conflict of interest that compromised his ability to provide zealous representation. The record reflects that Morris accused his counsel of lying to him, which resulted in the trial judge clearing the courtroom and admonishing Morris and his counsel to be respectful to each other. There is nothing in the record, however, to suggest that an actual conflict of interest existed. Nor is there any evidence in the record to suggest that any action taken by Morris' counsel resulted in any prejudice to him. We find Morris' claim of a conflict of interest on the part of his counsel that negatively affected the outcome of the trial to be without merit.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

Del.Supr.,2006.
Morris v. State
900 A.2d 101, 2006 WL 988041 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

843 A.2d 696                                                    Page 1
843 A.2d 696, 2004 WL 439881 (Del.Supr.)
**(Cite as: 843 A.2d 696)**

**H**
Morris v. State
Del.Supr.,2004.
(The decision of the Court is referenced in the At-
lantic Reporter in a 'Table of Decisions Without
Published Opinions.')
Supreme Court of Delaware.
Alonzo W. MORRIS, Jr., Defendant Below, Appel-
lant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
**No. 21, 2003.**

Submitted Feb. 13, 2004.
Decided March 3, 2004.

Court Below: Superior Court of the State of
Delaware in and for Sussex County, Cr. ID #
9911000751.

Before HOLLAND, BERGER and STEELE,
Justices.

*ORDER*

**\*1** This 3rd day of March, 2004, upon consideration
of the briefs of the parties, and given our standard
of review it appears to the Court that the judgment
of the Superior Court should be affirmed on the
basis of and for the reasons set forth in its Order
dated December 19, 2002.

NOW, THEREFORE, IT IS ORDERED that the
judgment of the Superior Court is AFFIRMED.

Del.Supr.,2004.
Morris v. State
843 A.2d 696, 2004 WL 439881 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. B

(156)

**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

T. HENLEY GRAVES
*RESIDENT JUDGE*

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DELAWARE 19947
TELEPHONE (302) 856-5257

April 27, 2005

N440
Alonzo Morris
SBI No. 00263971
Sussex Correctional Institution
P. O. Box 500
Georgetown, DE 19947

**RE:    Defendant ID No. 9911000751(R-1) - Postconviction Motion**

Dear Mr. Morris:

Mr. Morris was convicted of assault[1] in the first degree and possession of a deadly weapon during a felony. He was sentenced to 27 years, followed by probation.

The conviction was based upon the eyewitness testimony of the victim, James Bibbins, who knew him. He was convicted based upon the testimony of James Bynum who knew both the Defendant and the victim. Mr. Bynum testified he watched Defendant and victim "arguing"; he saw the victim get on his bike and pedal away, saw the Defendant pick up a pipe and go after Mr. Bynum, striking him in the head and then saw the Defendant run past the witness and he "looked dead at us". The "us" included another State's witness, Ineshia Mariguel Mitchell, who was with James Bynum. She testified she knew the Defendant and testified to seeing the above described events occur. Finally, another eyewitness, Richard Hughes, said he was waiting to start work at Harvey's Plumbing and Heating and observed the above events. He testified as to the graphic details including getting an eyeball to eyeball look at the Defendant after the assault took place. Mr. Hughes identified the Defendant as the assailant. The assault caused permanent injuries including but not limited to the victim's loss of sight in the damaged eye.

The Defendant offered testimony which placed him away from the crime scene. The Defendant did not testify.

---

[1]Mr. Morris' first conviction was reversed by the Supreme Court based upon the State's closing argument.

-1-

Ex. C

Alonzo Morris
Page 2
April 27, 2005

All grounds alleged are based on ineffective assistance of counsel. Therefore, the Defendant must establish that his attorney made mistakes or errors in his defense which were objectively unreasonable. Additionally, he must establish the claimed error caused him actual prejudice. *Strickland v. Washington*, 466 U. S. 668 (1984).

## GROUND ONE

The Defendant includes multiple claims in Ground One. After attempting to make sense out of these issues, I believe I have included all of them in the following summary.

The Defendant complains that he was arrested by the police without a warrant. Defendant alleges his attorney was ineffective for not making motions concerning his warrantless arrest.

He states the arrest warrant, which was obtained following his physical arrest, had inaccuracies in the probable cause portion of the application which the officer later admitted on cross-examination were mistakes or assumptions by the officers.

He claims that his attorney should have made a motion as to his claim that the entry into the Defendant's house to make a warrantless arrest was improper.

Defendant also argues that his indictment should have been dismissed due to the use of "perjurious and erroneous testimony before the Grand Jury". He offers nothing to substantiate this claim other than his assumption that if errors were made in the probable cause affidavit, then errors were made in the Grand Jury testimony.

Upon review of these claims, I conclude his claims have no factual or legal merit.

The Defendant was arrested for this assault with a deadly weapon without a warrant. A warrant was not needed.[2] He was arrested in his home immediately following the police investigation. He didn't testify at his second trial, but he did testify at his first trial. The transcript establishes that the police came to the Defendant's home and advised the Defendant's father why they were there. When Defendant's father reported this to the Defendant, he testified he told his father to "tell [Officer] Danny Davis to come in and talk to me", thereby establishing reasonable grounds to conclude the entry into his home was by consent.

Probable cause existed for his arrest. Consent allows police entry into the house without a warrant. The admitted errors in the probable cause affidavit did not contribute to the Defendant's

---

[2]11 Del. C. §1904(b)

Alonzo Morris
Page 3
April 27, 2005

arrest. The warrant was not obtained until after the arrest. Again, based upon what the police knew at the time they went to the Defendant's residence, probable cause existed for a felony arrest.

After he was arrested, a warrant was obtained. At trial, the police admitted that there were mistakes in the warrant. Nevertheless, it is clear to me that the police investigation quickly and correctly developed the Defendant as the person who assaulted the victim. The police had probable cause to arrest the Defendant regardless of any subsequent errors in the warrant application.

Since the Defendant has no proof of "perjurious" Grand Jury testimony, this complaint factually fails.

I find that trial counsel committed no errors under the aforementioned facts by not pursuing motions to suppress and/or motions to dismiss based on the aforementioned complaints.

Additionally, as to the prejudice prong of *Strickland*, the Defendant offers no prejudice. I presume he thinks that these alleged illegalities would set him free; but at best, if there were a basis to file a Motion to Suppress, he has not pointed to one piece of evidence that was admitted into evidence which would have been suppressed under his present application. Without prejudice, the claims against his attorney must fail.

Ground One fails and is dismissed.

## GROUND TWO

The Defendant alleges his attorney failed to adequately investigate and present evidence to support Defendant's position that false evidence was used to obtain the indictment.

The Defendant makes conclusory allegations that his indictment was based upon perjury. He attacks his trial attorney as being ineffective for not investigating and coming up with evidence to support this claim. He faults his attorney for not investigating "what evidence was used to obtain the indictment".

The Defendant offers no evidence to support his allegations other than the admitted mistakes contained in the probable cause affidavit for the arrest warrant. This is no basis for me to infer that there was perjury in the State's presentation of the case to the Grand Jury, and, therefore, the entire prosecution is somehow tainted and should now be dismissed.

Defendant has not shown his attorney breached an objective standard of reasonable representation by failing to investigate the Grand Jury proceedings, nor has he established any prejudice. He has not shown that the Grand Jury was misled into indicting of the Defendant.

-3-

Alonzo Morris
Page 4
April 27, 2005

As an aside, the Defendant criticizes his attorney for not impeaching the credibility of Detective Davis during trial by way of the mistakes and/or assumptions in the probable cause warrant. The Defendant is mistaken. His trial attorney did attack the officer's credibility for this and other reasons.

This ground is dismissed.

## GROUND THREE

Defendant alleges that his attorney "failed to properly litigate Defendant's claim of double jeopardy".

He claims his second trial attorney should have questioned his first trial attorney as to why she didn't ask for a mistrial. Such an examination would have established she was "in collusion with the prosecutor to obtain a conviction".

I do not find fault with counsel based on the above argument because it is clear that there was not even an objection made by first trial counsel as to the portion of the State's argument that was found to be erroneous by the Supreme Court. If she missed the objection, then how could she have been thinking about a mistrial. Based on the missed objection, the Defendant received a new trial. This claim is frivolous.

Finally, the double jeopardy arguments have been presented to this Court and the Supreme Court by three different attorneys. It has been adequately adjudicated.

This ground is dismissed.

## GROUND FOUR

Defendant attacks trial counsel for failing to litigate his in-court identification. Defendant complains that his identification by the victim, who did not identify him in Court during the first trial, was suggestive. He also complains that the identification by Mr. Hughes, the Harvey's Plumbing employee, was suggestive.

I'm satisfied that there was no error by trial counsel as to the in-court identification of the Defendant by the victim. While it is true that the victim wasn't able to identify Mr. Morris at the first trial, it was brought out that the assault blinded him in his right eye and the Defendant was seated to the witness' right side during the first trial, but to his left side in the second trial.

Presumably because the victim didn't identify the Defendant at the first trial, the State did not

-4-

Alonzo Morris
Page 5
April 27, 2005

ask the victim to identify anyone. Neither did the defense attorney. When defense counsel asked the victim to describe his assailant, the victim pointed out the Defendant and said "There he is". Thereafter, the victim was examined and cross-examined vigorously as to that identification. It is noteworthy that this was not a "stranger" assault; the victim knew the Defendant. I do not find fault with defense counsel for not "litigating" the in-court identification by the victim. The victim was put to the test by vigorous cross-examination.

Finally, the Defendant can establish no prejudice as to this allegation of ineffective assistance of counsel. Mr. Morris ignores the two most important eye witnesses in this case, James Bynum and Ineshia Mariguel Mitchell. These witnesses knew the Defendant and the victim from their community. They had no ax to grind. They reported what happened. They testified to the assault by Mr. Morris against an elderly man peddling his bike away from Mr. Morris. The evidence that Mr. Morris is guilty was overwhelming.

## GROUND FIVE

The Defendant alleges his attorney should have objected to the Court's instruction concerning the felony arrest of the Defendant without the necessity of a warrant.

I do not know if trial counsel objected or not, but the instruction is not a misstatement of the law and therefore there is no basis to make this claim.

It is dismissed.

## GROUND SIX

In this very brief allegation, the Defendant claims his attorney was ineffective by not properly vindicating the Defendant's due process rights by (1) his performance as to the fingerprint testimony and (2) knowingly allowing the eye doctor to present false testimony.

The Defendant does not develop these conclusory allegations and they are dismissed for that reason.

## GROUND SEVEN

Defendant argues his trial counsel had a conflict of interest that compromised his ethical obligations to zealously represent the Defendant.

Trial counsel was court-appointed. It was a difficult assignment because of interesting but difficult double jeopardy arguments that had to be made prior to trial.

Alonzo Morris
Page 6
April 27, 2005

At some time, appointed counsel was upset with the Defendant about remarks the Defendant was making about counsel's performance, etc. This was discussed in open Court.

There is nothing to establish that a breakdown of the attorney-client relationship occurred in this case. There is nothing to support the conclusory allegation that defense counsel was not zealous. He was zealous. Defense counsel did a fine job, but he had the problem of having bad facts from a defense viewpoint. Two neutral eyewitnesses who knew the Defendant, saw the Defendant pick up a pipe and chase an old man, blinding him.

Defense counsel and the Defendant don't have to like each other. As appointed counsel, your attorney's responsibility was to give you the best defense he was capable of, within his professional and ethical guidelines. I am satisfied that he did that.

Defendant's multiple claims for relief based upon ineffective assistance of counsel are denied.

**IT IS SO ORDERED.**

Yours very truly,

T. Henley Graves

THG:baj
cc:    Prothonotary

-6-

Westlaw.

Not Reported in F.Supp.2d                                                                      Page 1
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

**H**

Thomas v. Snyder
D.Del.,2001.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Kevin A. THOMAS, Petitioner,
v.
Robert W. SNYDER, Warden, and Attorney General of the State of Delaware, Respondents.
**No. CIV.A. 98-597-GMS.**

Nov. 28, 2001.

MEMORANDUM AND ORDER

SLEET, District J.

*1 Kevin A. Thomas was convicted of first degree murder and possession of a deadly weapon during the commission of a felony. He is presently incarcerated in the Delaware Correctional Center in Smyrna, Delaware, where he is serving a sentence of life imprisonment. Thomas has filed with this court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. As explained below, the court will dismiss Thomas' petition as time barred by the one-year period of limitation prescribed in 28 U.S.C. § 2244(d).

I. BACKGROUND

On June 28, 1993, following a jury trial in the Delaware Superior Court, Kevin A. Thomas was convicted of first degree murder and possession of a deadly weapon during the commission of a felony. The evidence at trial demonstrated that on September 13, 1992, Thomas shot David Turner in the face and killed him. Thomas was seventeen years old at the time. He was sentenced to life in prison without parole on the murder conviction and to a consecutive sentence of five years in prison on the weapons conviction. The Delaware Supreme Court affirmed Thomas' conviction and sentence on September 21, 1994.

On December 18, 1996, Thomas filed in state court a motion for post-conviction relief pursuant to Rule 61 of the Delaware Superior Court Criminal Rules.

The trial court summarily dismissed Thomas' Rule 61 motion on December 23, 1996. Thomas appealed to the Delaware Supreme Court. His subsequent motion to withdraw the appeal was granted on March 11, 1997. Thomas filed a second Rule 61 motion for post-conviction relief on March 27, 1997, which was summarily dismissed on May 9, 1997. Again, Thomas appealed to the Delaware Supreme Court. The Court affirmed the order of dismissal on November 24, 1997.

Thomas has now filed with this court the current petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition Thomas articulates four separate grounds for relief: (1) The searches of his residence and car were in violation of the Fourth Amendment, and all evidence seized from these searches should have been suppressed; (2) The trial court erred in admitting identification testimony that was the result of an impermissibly suggestive photographic identification procedure; (3) The trial court violated his constitutional right to due process by giving a supplemental jury instruction pursuant to *Allen v. United States,* 164 U.S. 492 (1896); and (4) His constitutional rights were violated when police questioned him without a parent or legal guardian present. The respondents argue that the petition is subject to a one-year period of limitation that expired before Thomas filed it. Thus, they request that the court dismiss the petition as time barred.

II. DISCUSSION

A. One-Year Period of Limitation

In the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress amended the federal habeas statute by prescribing a one-year period of limitation for the filing of § 2254 habeas petitions by state prisoners. *Stokes v. District Attorney of the County of Philadelphia,* 247 F.3d 539, 541 (3d Cir.2001). Effective April 24, 1996, the AEDPA provides:

*2 (1) A 1-year period of limitation shall apply to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. D

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review....

28 U.S.C. § 2244(d)(1). In order to avoid any impermissible retroactive application of the one-year period of limitation, state prisoners whose convictions became final prior to the enactment of the AEDPA were allowed to file their § 2254 petitions no later than April 23, 1997. See Burns v. Morton, 134 F.3d 109, 111 (3d Cir.1998)(prohibiting dismissal of petitions filed on or before April 23, 1997, as untimely under § 2244(d)(1)(A)).

Thomas' conviction became final prior to the enactment of the AEDPA. He was convicted on June 28, 1993. The Delaware Supreme Court affirmed the judgment of conviction on September 21, 1994. Thomas was then allowed ninety days in which to file a petition for a writ of certiorari with the United States Supreme Court. See Supreme Court Rule 13. Although Thomas did not file a petition with the United States Supreme Court, the ninety-day period in which he could have filed such a petition is encompassed within the meaning of "the conclusion of direct review or the expiration of the time for seeking such review," as set forth in § 2244(d)(1)(A). See Kapral v. United States, 166 F.3d 565, 576 (3d Cir.1999)(holding that on direct review, the limitation period of § 2244(d)(1)(A) begins to run at the expiration of the time for seeking review in the United States Supreme Court). Therefore, Thomas' conviction became final on December 20, 1994, ninety days after the Delaware Supreme Court affirmed his conviction, and well before the enactment of the AEDPA on April 24, 1996. Thus, he could have filed a timely habeas petition with this court not later than April 23, 1997. See Burns, 134 F.3d at 111.

Ascertaining the precise date Thomas filed his habeas petition with the court is somewhat problematic. The court's docket reflects that the petition

was filed on October 21, 1998, the date the clerk's office received his petition and filing fee. A pro se prisoner's habeas petition, however, is considered filed on the date he delivers it to prison officials for mailing to the district court, not on the date the court receives it. Id. at 113. Thomas has provided the court with no documentation establishing the date he delivered his petition to prison officials for mailing. The petition itself, however, is dated August 10, 1998. The respondents maintain that the filing date is October 8, 1998, but they provide no documentation to support this conclusion. Under these circumstances, the court will extend Thomas every benefit of the doubt and will consider his habeas petition filed on August 10, 1998, the earliest possible date he could have delivered it to prison officials for mailing.

*3 Obviously Thomas' habeas petition was filed well beyond the April 23, 1997 deadline. That, however, does not end the inquiry because § 2244(d)'s period of limitation may be either statutorily or equitably tolled. See Jones v. Morton, 195 F.3d 153, 158 (3d Cir.1999).

B. Statutory Tolling

The AEDPA provides for statutory tolling of the one-year period of limitation:

The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

Thomas filed in state court a Rule 61 motion for post-conviction relief on December 18, 1996, which the Superior Court summarily dismissed on December 23, 1996. As previously noted, Thomas appealed from the order of dismissal. His subsequent motion to withdraw the appeal was granted on March 11, 1997. The respondents concede, and correctly so, that the filing of this motion for post-conviction relief tolled the period of limitation. Thus, the period of time from December 18, 1996, through March 11, 1997, does not count toward the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

one-year period of limitation.[FN1]

> FN1. The court notes that the one-year period is tolled during the time between the Superior Court's dismissal of Thomas' Rule 61 motion and his timely appeal to the Delaware Supreme Court. *See Swartz v. Meyers,* 204 F.3d 417, 420 (3d Cir.2000).

Thomas filed a second Rule 61 motion for post-conviction relief in state court on March 27, 1997, which was summarily dismissed on May 9, 1997. The Delaware Supreme Court affirmed the dismissal on November 24, 1997. Again, the respondents concede that the filing of the second Rule 61 motion tolled the period of limitation.[FN2] Thus, the period of time from March 27, 1997, through November 24, 1997, is excluded from the one-year limitation period.[FN3]

> FN2. Only a "properly filed application" for post-conviction review tolls the one-year period under § 2244(d)(2). Whether Thomas' second Rule 61 motion constitutes a "properly filed application" is subject to debate. Under Rule 61, "[a]ny ground for relief that was not asserted in a prior postconviction proceeding ... is thereafter barred." Super. Ct. R.Crim. P., Rule 61(i)(2). This procedural bar, however, is inapplicable where a motion raises "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction." *Id.,* Rule 61(i)(5). The court need not, and does not, address whether Thomas' second Rule 61 motion was a "properly filed application" because the respondents concede that the one-year period was tolled while the second Rule 61 motion was pending. Regardless, as discussed herein, Thomas' habeas petition is untimely.

> FN3. Thomas could have filed, but did not file, a petition for a writ of certiorari with the United States Supreme Court within ninety days of the Delaware Supreme Court's order. *See* Supreme Court Rule 13. As explained above, on direct review that ninety-day period is excluded from the one-year period of limitation. *See Kapral,* 166 F.3d at 576. In post-conviction proceedings, however, the time during which a state prisoner may file a petition in the United States Supreme Court does *not* toll the one-year period, and the ninety-day period is counted. *Stokes,* 247 F.3d at 543.

Nonetheless, since the date of the enactment of AEDPA, more than one year has passed during which statutory tolling does not apply. First, from April 24, 1996, through December 17, 1996, a period of 238 days, no post-conviction proceedings were pending, and those 238 days are included as part of the one-year period. In addition, from March 12, 1997, through March 26, 1997, no post-conviction relief proceedings were pending, and those fourteen days must be counted. Finally, from November 25, 1997, through August 9, 1998, a period of 258 days, no motion for post-conviction relief was pending, and those 258 days must be counted.

In sum, following the enactment of the AEDPA, 510 days lapsed during which Thomas had no post-conviction proceedings pending for purposes of § 2244(d)(2). This period of time, well in excess of one year, must be counted. The court thus concludes that while the statutory tolling provision applies to certain portions of time since the enactment of the AEDPA, it does not render Thomas' habeas petition timely filed.

### C. Equitable Tolling

Additionally, the one-year period of limitation prescribed in § 2244(d) may be subject to equitable tolling. *Fahy v. Horn,* 240 F .3d 239, 244 (3d Cir.2001); *Jones,* 195 F.3d at 159; *Miller v. New Jersey State Dep't of Corrections,* 145 F.3d 616, 618 (3d Cir.1998). The doctrine of equitable tolling

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

applies:

**\*4** only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller,* 145 F.3d at 618-19 (citations omitted). In other words, equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones,* 195 F.3d at 159, quoting *United States v. Midgley,* 142 F.3d 174, 179 (3d Cir.1998).

In the instant case, Thomas argues that the AEDPA's one-year period of limitation is at odds with the three-year period allowed for filing a Rule 61 motion for post-conviction relief. He contends that because Delaware allows three years in which to file a Rule 61 motion, and petitioners are required to exhaust state remedies before filing habeas petitions in federal court, it is unfair to apply the AEDPA's one-year period of limitation, rather than Delaware's three-year period.

Although Thomas is correct that Delaware generally allows three years in which to file a Rule 61 motion, *see* Super. Ct. R.Crim. P., Rule 61(i)(1), the court is unimpressed by his equitable tolling argument. As explained above, the court has applied § 2244(d)(2)'s tolling provision to exclude the periods of time during which his two post-conviction proceedings were pending before the state courts. These periods of time do not count against Thomas. There is nothing unfair or inequitable in applying the AEDPA's one-year period of limitation to petitioners who wait more than a year before filing a habeas petition in federal court, even if the Delaware rule permits a longer period of time in which to file Rule 61 motions.

More important, Thomas has failed to articulate any extraordinary circumstances that prevented him from filing his habeas petition with this court in a timely manner. Indeed, he has failed to offer *any* explanation for the delay. He has not provided the court with any reason why, after the AEDPA was enacted, he waited until December 18, 1996, to file his first Rule 61 motion. He has not explained why, after his second Rule 61 proceedings were completed on November 24, 1997, he waited until August 10, 1998, to file his habeas petition with this court.

In short, the court cannot discern any extraordinary circumstances that warrant applying the doctrine of equitable tolling. Thomas' habeas petition will be dismissed as untimely.

### D. Motion for Appointment of Counsel

In a letter to the court dated April 16, 2000, Thomas inquired respecting appointment of counsel in this matter. The court construes this letter as a motion for appointment of counsel. The Sixth Amendment right to counsel does not extend to habeas proceedings. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *United States v. Roberson,* 194 F.3d 408, 415 n. 5 (3d Cir.1999). Additionally, the court has determined that Thomas' habeas petition will be dismissed as untimely. Accordingly, Thomas' letter dated April 16, 2000, construed as a motion for appointment of counsel, will be denied as moot.

### III. CERTIFICATE OF APPEALABILITY

**\*5** Finally, the court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When the court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 5

constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons discussed above, Thomas' habeas petition is barred by the one-year period of limitation. The court cannot conclude that the period should be statutorily or equitably tolled to render the petition timely. The court is convinced that reasonable jurists would not debate otherwise. Thomas therefore cannot make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue.

### IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. Thomas' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED.

2. Thomas' letter dated April 16, 2000, requesting appointment of counsel, is construed as a motion for appointment of counsel, and so construed, is DENIED as moot.

3. The court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

D.Del.,2001.
Thomas v. Snyder
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2007, I electronically filed the attached

documents with the Clerk of Court using CM/ECF. I also hereby certify that on August

28, 2007, I have mailed by United States Postal Service, the same documents to the

following non-registered participant:

Alonzo W. Morris, Jr.
SBI No. 263971
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

                                    /s/ James T. Wakley
                                    Deputy Attorney General
                                    Department of Justice
                                    820 N. French Street
                                    Wilmington, DE 19801
                                    (302) 577-8500
                                    Del. Bar. ID No. 4612
                                    james.wakley@state.de.us

Date:  August 28, 2007