IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
DELAWARE

ALONZO MORRIS JR.
    Petitioner,

        v.                                        Civ. Act. No.
                                                  07-194-GMS

Thomas Carroll, Warden and
Joseph R. Biden III, Attorney
General for Delaware Respondents

FILED

JAN 03 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## MOTION TO PROCEED BY LEAVE OF THE COURT

        Now comes, petitioner, Alonzo Morris, pursuant to Rule 15 governing
Amendments of Civil Rules of procedures, requesting this honorable court to consider the
following amendment when making its decision on petitioner's **petition for writ of**
Habeas Corpus; argument (No.4), Conflict of Interest.

*Scanned*

### ARGUMENT

        Petitioner Morris would like this Court to consider the following factors in
deciding argument No. 4, that there existed a conflict of interest between defendant
Morris and trial counsel James Liguori, which required the trial judge to conduct an ex
parte in camera proceeding regarding the conflict of interest; and, failure to conduct a
threshold inquiry into a potential conflict under principals enunciated in Holloway v.
Arkansas 435 US. 475 (1978) and Cuyler v. Sullivan 446 U.S. 335 (1980), and not only
"resulted in a decision that was contrary to, or involved an unreasonable application of
clearly established Federal law as determined by the United States Supreme Court" but
also, "resulted in a decision that was based on an unreasonable determination of facts in
light of the evidence presented in the State Court proceedings." (28 U.S.C. 2254 (d) (1)
and 2254 (d) (2).

        1. This courts ruling in Riley v. Carroll Civ. A. No. 04-1435-GMS, 2007 WL
1795883 (D. Del), articulates specific factors that must be taken into consideration in the
present case.

        On September 6, 2002, trial counsel informed the Superior Court judge that the
defendant (Morris) accused trial counsel of lying, and requested an ex parte meeting, (see
States answering brief pg. 23 No. 215, 2005) The Superior Court judge cleared the
courtroom and heard trial counsel and defendant Morris. On September 9, 2002,
defendant Morris filed a pro-se motion for a Writ of Prohibition in the Delaware Supreme
Court, which complained of trial counsel's failure to provide adequate representation and
the trial court's specific reason for appointing counsel to this case was to insure defendant
was not allowed to present evidence that police lied in order to obtain the arrest warrant,
at the preliminary hearing and to obtain the Grand Jury indictment. (See docket sheet ex..
A. Petition for a Writ of Prohibition by Alonzo Morris No. 513, 2002) The Clerk of the

Delaware Supreme Court forward the Writ of Prohibition dated 9/9/02 and two letters dated 9/7/02 filed by defendant Morris in the Delaware Supreme Court to trial counsel on 9/13/02 (See Ex. B) Based upon this pro-se motion to the Delaware Supreme Court filed by defendant Morris, trial counsel corresponded ex-parte on 9/23/02 with the Superior Court trial judge, requesting an ex-parte, in camera hearing with the defendant, trial counsel and trial judge. (See Ex. C) Trial counsel started that, "Morris allegation against him and the court compromises his ethical obligation to act as Morris zealous attorney." This hearing never took place and failure of trial court to hold said hearing violated defendant Sixth Amendment right to conflict free counsel.

The Sixth Amendment guarantees a criminal defendant "the right to adequate representation by an attorney of reasonable competence and the right to the attorney's undivided loyalty free of conflict of interest." Riley v. Carroll 2007 WL 1795883 (D. Del). Your Honor held in Riley that: "Pursuant to Holloway v. Arkansas 435 U.S. 475 (1978) and Cuyler v. Sullivan 446 U.S. 335 (1980), a trial judge must conduct a threshold inquiry to determine if an actual and disqualifying conflict of interest exists in two situations: first, when an objection is made to an attorney's multiple representation or second, in other spherical circumstances." Riley v. Carroll WL 1795883 (D. Del)

The trial courts failure to conduct a ex parte in camera hearing was contrary to clearly established Federal law.

Trial counsels correspondence to the trial judge, coincided to the actual conflict of interest, when trial counsel started that representing defendant Morris compromises counsels ethical obligation to act as a zealous attorney. (see Ex. C) Based upon this written correspondence from trial counsel to the trial court any decisions rendered by both the Delaware Superior Court on defendants Rule 61 and the Delaware Supreme Court on appeal are contrary to, and a unreasonable application of clearly established United States Supreme Court precedent, also, is, based on an unreasonable determination in the written correspondence to the trial judge from trial counsel on September 23, 2002. The trial courts' failure to factually inquire into the nature of the conflict and into the defendant Morris's awareness of the conflict shows a clear and uncontested failure to satisfy the threshold duty of inquiry. Furthermore, trial courts failure to rely on trial counsel's assessment of the situation between himself and the defendant in not determining that there was a conflict and need to conduct an ex parte hearing was an unreasonable determination that the situation did not involve an evidentiary dispute that disqualified counsel from acting as counsel for the defendant. Quoting Mickens v. Taylor 535 U.S. at 167-68 "defense counsel is in the best position to determine if a conflict exists." Pursuant to AEDPA, a federal court may consider a habeas corpus petition filed by a state prisoner only on the ground that he is in custody in violation of the constitution or laws or treaties of the United States. In the present case petitioner has demonstrated clear and convincing evidence that the State's determinations of the factual issue is incorrect and the failure of trial court to conduct an inquiry in light of trial counsel's written correspondence to the trial court requesting a ex parte haring clearly violated the Sixth Amendment. It is well established that a trial judge must conduct a threshold inquiry to determine if an actual and disqualifying conflict of interest exist, when an objection by trial counsel is made, because "defense counsel is in the best position to determine if a conflict exists. Failure of a trial judge to do so requires automatic reversal of defendant Morris's conviction. In this courts decision in Riley v.

Carroll 2007 WL 1795883 (D. Del), Your Honor held that: "Although the Supreme Court has identified when a threshold inquiry into a potential conflict is required, the Supreme Court has not articulate a standard explaining how a Court satisfies that threshold duty on inquiry." The relevant issue is that the trial judges complete failure to inquire into the conflict doesn't provide sufficient factual inquiry into the nature of the conflict and the defendants awareness of the conflict. (Citing Government of Virgin Islands v. Zepp 748 F. 2d. 125, 135 3rd Cir. 1984) Based on the ruling in Riley 2007 WL 1798553 D. Del the state courts acted unreasonably by refusing to apply clearly established federal precedent in Holloway and Cuyler dictating a threshold inquiry into a potential conflict must be held once trial counsel notifies the trial judge a conflict exists. This courts use as its point of departure the Supreme Court's rule that a court must conduct a threshold inquiry into a potential conflict is binding and distinguishes defendant Morris' case from this court decision in Riley v. Carroll Civ. A. No. 04-1435-GMS.

> A) Riley represented himself pro-se, Morris was represented by court appointed counsel.
>
> B) In Riley case Judge Vaugh explicitly asked counsel what type of action was required, and counsel replied that the situation with Riley did not necessitate an ex parte in camera hearing at the particular point in time.
>
> In Morris case trial counsel requested the trial judge hold an ex parte in camera hearing, that the trial court failed to hold, in clear violation of well established federal law.
>
> C) In Riley's case he constantly referred to the problem as, one of evidence. In Morris case the problem compromised trial counsels ethical obligation to act as a zealous attorney, therefore disqualifying trial counsel as Morris zealous advocate.

Based upon the aforementioned factors and the relevant case law, Your Honor held in Riley v. Carroll 2007 WL 1795883 (D. Del) petitioner requests that this court take into consideration the relevant factors presented, when making a judgment on argument No. 4 Conflict of Interest within the Habeas Corpus petition before the court.

Respectfully Submitted,

01/02/08

Alonzo Morris #263971
M.H.U. 21 BU9
D.C.C. 1181 Paddock Road
Smyrna, DE 19977

## RULE 7.1.1 CERTIFICATION

I hereby certify that I have neither sought nor obtained the consent of the respondent, to the subject matter of the motion.

Alonzo W. Morris Jr.
Petitioner

**CERTIFICATE OF SERVICE**

I hereby certify that on January 2, 2008, I have mailed by United States Postal
Service, the same documents to the following participant:

> James T. Wakley
> Deputy Attorney General
> Department of Justice
> 820 N. French Street
> Wilmington, DE 19801
> (302) 577-8500
> Del. Bar. ID. No. 4612

Dated 01/02/08

IN THE SUPREME COURT OF THE STATE OF DELAWARE

513 , 2002

J. E. LIGUORI                          PETITION FOR A WRIT OF PROHIBITION
                                       BY ALONZO MORRIS.

J. R. WILLIAMS

 DF $ 00.00

 2002

| 1 | Sep 11 | Petition for a writ of prohibition dated 9/11/02 by petitioner. (copies sent to: Judge Graves, John Williams, Esquire and to Prothonotary-SC) (eas) |
| 2 | Sep 11 | Writ of Prohibition dated 09/09/02 by petitioner. (mfm) |
| 3 | Sep 11 | Letter dated 09/07/02 from Alonzo Morris to Clerk requesting to proceed with this matter in forma pauperis. (mfm) |
| 4 | Sep 11 | Letter dated 09/07/02 from Alonzo Morris to Chief Justice Veasey regarding the double jeopardy issue in his case Morris v. State 795A2d.653 (Del.2002). (mfm) |
| 5 | Sep 11 | Affidavit of Court Appointed Counsel to Waive Filing Fee. (served by mail 9/11/02) (eas) |
| 6 | Sep 13 | Letter dated 9/13/02 from Chief Deputy Clerk to James Liguori, Esquire forwarding the Writ of Prohibition dated 9/9/02 and two letters dated 9/7/02 filed by Mr. Alonzo Morris for appropriate disposition. (dlw) |

Ex A.

A 73

SUPREME COURT OF DELAWARE

CATHY L. HOWARD
*Clerk*

AUDREY F. BACINO
*Assistant Clerk*

DEBORAH L. WEBB
*Chief Deputy Clerk*

LISA A. SEMANS
*Senior Court Clerk*

SUPREME COURT BUILDING
55 THE GREEN,
P.O. BOX 476
DOVER, DE 19903

(302) 739-4155

September 13, 2002

James E. Liguori, Esquire
Liguori, Morris & Redding
46 The Green
Dover, DE 19901

Re:    *In the Matter of Alonzo Morris, No. 513, 2002*

Dear Mr. Liguori:

Enclosed are copies of two letters dated September 7, 2002 and a copy of a Writ of Prohibition dated September 9, 2002 filed with the Court by Mr. Alonzo Morris in the above captioned matter on September 11, 2002. The Court has requested me to provide you with a copy of Mr. Morris' letters and Writ of Prohibition for appropriate disposition. Please inform Mr. Morris that all further correspondence to the Court on his behalf should be through you as his attorney.

By copy of this letter, I am informing John R. Williams, Esquire, Deputy Attorney General, of the Court's action regarding Mr. Morris' two letters and Writ of Prohibition. I am providing Mr. Williams with copies of Mr. Morris' documents for informational purposes only. The Court will take no further action regarding Mr. Morris' two letters and Writ of Prohibition.

Very truly yours,

Deborah L. Webb

cc:    Mr. Alonzo Morris
John R. Williams, Esquire
(with a copy of Mr. Morris' documents)

A 74

Ex B.



# Liguori, Morris & Redding

**Attorneys At Law**
46 The Green. Dover. Delaware 19901
(302) 678-9900 • Fax (302) 678-3008

James E. Liguori
Gregory A. Morris
Laura A. Yiengst

September 23, 2002

Honorable T. Henley Graves
Resident Judge
Sussex County Superior Court
P. O. Box 746
Georgetown, DE 19947

> **Re:    Ex-Parte Communication**
> **State v. Alonzo W. Morris, Jr.**

Dear Judge Graves:

I've enclosed a portion of a pro se motion the above Defendant filed with the Supreme Court.

I'm troubled by the highlighted area of Page Three of his petition because not only is his assertion false, but he intimates that the court and I are somehow in collusion to prevent Defendant from a fair hearing and/or trial.

I truly believe that for Mr. Morris to make such an allegation against me and the court compromises my ethical obligation to act as his zealous attorney.

I can only see trouble ahead, if at this juncture, the Defendant is already resorting to lies and innuendo to our Supreme Court about my relationship with him and the court. I request an in camera hearing as soon as practical with the Defendant, myself and the court to determine whether there exists an ethical reason for me to request removal from further representation of this Defendant.

Respectfully submitted,

James E. Liguori

JEL:sec

Enclosure

cc:    Mr. Alonzo W. Morris, Jr.

Westlaw.

Slip Copy
Slip Copy, 2007 WL 1795883 (D.Del.)
**(Cite as: Slip Copy)**

MHU
Law Library

Page 1

**H**

**Riley v. Carroll**
D.Del.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
James W. **RILEY**, Petitioner,
v.
Thomas **CARROLL**, Warden, et. al., Respondents.
**Civ. A. No. 04-1435-GMS.**

June 19, **2007**.

James W. **Riley**, Pro se petitioner.
Thomas E. Brown, Deputy Attorney General,
Delaware Department of Justice, Wilmington, DE,
Attorney for respondents.

**MEMORANDUM OPINION**
SLEET, District Judge.

**I. INTRODUCTION**

*1 Petitioner James W. **Riley** ("Riley") filed the
pending petition for a writ of habeas corpus
("petition") pursuant to 28 U.S.C. § 2254. (D.I.2.)
For the reasons that follow, the court will deny his
petition.

**II. FACTUAL AND PROCEDURAL BACK-
GROUND**

In 1982, a Delaware Superior Court jury convicted
**Riley** of murdering a liquor store owner during the
course of a robbery. **Riley** was sentenced to death,
and the Delaware Supreme Court affirmed **Riley's**
conviction and sentence. **Riley** filed a motion for
post-conviction relief pursuant to Delaware Superi-
or Court Criminal Rule 61 ("Rule 61 motion"). The
Superior Court denied **Riley's** Rule 61 motion, and
the Delaware Supreme Court affirmed that judg-
ment. *Riley v. State,* 585 A.2d 997 (Del.1985).

In August 1991, **Riley** sought federal habeas relief
pursuant to 28 U.S.C. § 2254. **Riley** subsequently
filed a motion to amend his § 2254 petition, and the
Honorable Joseph J. Farnan, Jr. denied the motion

to amend as well as **Riley's** original § 2254 peti-
tion. *Riley v. Snyder,* 840 F.Supp. 1012
(D.Del.1993).**Riley** appealed, and the Third Circuit
Court of Appeals reversed the order denying **Ri-
ley's** motion to amend his habeas petition and re-
manded the ease for further proceedings. On re-
mand, Judge Farnan denied **Riley's** amended
habeas petition. *Riley v. Taylor,* 1998 WL 172856
(D.Del. Jan. 16, 1998).**Riley** appealed, and al-
though the Third Circuit Court of Appeals initially
affirmed that decision, the Third Circuit sub-
sequently granted **Riley's** petition for rehearing *en
banc* on two issues and vacated the entire initial
panel opinion. *See Riley v. Taylor,* 277 F.3d 261
(3d Cir.2001). Thereafter, the Third Circuit granted
**Riley's** petition for habeas relief and ordered a new
trial. *Id.*

Judge Vaughn of the Delaware Superior Court ap-
pointed two attorneys to represent **Riley** during his
re-trial. **Riley** filed several motions to represent
himself and, in March 2003, Judge Vaughn conduc-
ted a colloquy and granted **Riley's** motion to pro-
ceed *pro se.*Judge Vaughn also appointed **Riley's**
two defense attorneys as stand-by counsel. A
Delaware Superior Court jury convicted **Riley** of
first degree (felony) murder, first degree robbery,
and possession of a deadly weapon during the com-
mission of a felony, but acquitted **Riley** of inten-
tional murder and a related conspiracy charge. *See
Riley v. State,* 867 A.2d 902 (Table), 2004 WL
2850093 (Del. Oct. 20, 2004).**Riley** opted to have
stand-by counsel represent him during the penalty
phase of his proceeding. The Superior Court sen-
tenced **Riley** to life imprisonment on the murder
conviction and to a total of 25 years incarceration at
Level V on the remaining two convictions. *Id.* at
*1.

Thereafter, **Riley** filed a motion titled "motion to
extend time to file a motion for new trial pursuant
to Rule 33," which the Superior Court treated, and
denied, as a motion for new trial. (D.I. 17, App. to
Appellant's Op. Br. in *Riley v. State,* No. 259,2003,
at A-145 and A-146, and A-151 to A-154.) Riley

represented himself on direct appeal, and the Delaware Supreme Court affirmed his conviction and sentence. *See generally Riley,* 2004 WL 2850093.

*2 Riley timely filed the instant petition pursuant to 28 U.S.C. § 2254. (D.I.2.) The State filed an answer, and Riley replied. (D.I. 17; D.I. 18.) Riley's habeas petition is now ready for review.

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences ... and to further the principles of comity, finality, and federalism."*Woodford v. Garceau,* 538 U.S. 202, 206 (2003) (internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."*Bell v. Cone,* 535 U.S. 685, 693 (2002); *see Woodford,* 538 U.S. at 206.

### B. Standard of Review

If a petitioner presented a federal habeas claim to the state's highest state court, and that court adjudicated the claim on the merits, then federal habeas relief will only be warranted if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor,* 529 U.S. 362, 412 (2000); *Appel v. Horn,* 250 F.3d 203, 210 (3d Cir.2001). A claim has been adjudicated on the merits for the purposes of 28 U.S.C. § 2254(d) when the state court "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground."*Rompilla v. Horn,* 355 F.3d 233, 247 (3d Cir.2004)(internal citations omitted), *rev'd on other grounds by Rompilla v. Beard,* 545 U.S. 374 (2005).

AEDPA also requires a federal court to presume that a state court's determinations of factual issues are correct, and the presumption is only rebuttable by a demonstration of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn,* 209 F.3d 280, 286 (3d Cir.2000).

## IV. DISCUSSION

*3 Riley asserts the following four grounds for relief in his habeas petition: $\frac{FN1}{}$ (1) the trial court failed to conduct an adequate inquiry into the conflict of interest that existed between Riley and his two defense attorneys; (2) the Delaware Supreme Court erred in denying Riley's conflict of interest claim because it failed to determine if counsel possessed knowledge beyond a reasonable doubt that Riley's proposed alibi defense was perjurious; (3) Riley's waiver of representation was not voluntary or knowing because he only opted to represent himself in order to avoid representation by conflicted counsel; and (4) the Delaware Supreme Court decision affirming his conviction on re-trial is tainted by the participation of two justices who should have been disqualified for participating in prior proceedings involving Riley.

FN1. The court has re-numbered Riley's claims without changing the substantive arguments contained therein.

## A. Claims one, two, and three: Sixth Amendment violations

Claims one, two, and three, present variations of a single issue, namely, that the two defense attorneys created, and were operating under, an actual conflict of interest because they did not have an adequate reason for believing that Riley's proposed alibi defense was perjurious. In his first two claims, Riley contends that he should be granted habeas relief because neither the Superior Court, nor the Delaware Supreme Court, conducted an adequate factual inquiry into counsels' basis for concluding that his alibi defense was false. In his third Sixth Amendment claim, Riley argues that he did not knowingly and voluntarily waive his right to representation in his re-trial because his request to proceed *pro se* was based on his fear of being represented by conflicted counsel. (D.1.18)

The factual background for Riley's Sixth Amendment claims, excerpted from the Delaware Supreme Court's opinion and portions of the March 19, 2003 colloquy transcript, is as follows.

After Riley's convictions and sentences were overturned and his case returned to the Superior Court for re-trial, two attorneys were appointed by the Superior Court to represent him. On several occasions, Riley complained to the Superior Court judge about his court-appointed counsel. In 2003, Riley complained that his counsel improperly refused to file a writ of certiorari in the United States Supreme Court. Also in February 2003, Riley complained that his counsel refused to have certain fingerprint evidence examined and requested leave to proceed *pro se*. He later withdrew this request. In March 2003, however, Riley complained that his counsel had failed to provide him with discovery material and again asserted his right to proceed *pro se*. In a letter dated March 18, 2003, Riley's counsel notified the Superior Court judge that Riley intended to represent himself at trial if he decided not to accept the State's plea offer. Subsequently, Riley decided

not to accept the State's plea offer and, on March 19, 2003, the Superior Court judge held a hearing on Riley's request to proceed *pro se* at trial.

*4 At the hearing, which was attended by Riley, Riley's two court-appointed defense attorneys, and two prosecutors, the judge conducted a colloquy with Riley concerning the reasons why he wanted to represent himself. Riley responded that the reasons, which involved "differences of opinions" between himself and his counsel, should not be stated in open court, but should be explored in a "private meeting" with his counsel and the judge. The judge asked if the reasons had to do with differences regarding how his case should be handled. Riley answered, "Right, yes." The judge then asked Riley if he felt competent to represent himself. Riley responded that this would be his "first time" representing himself, but that he would try and was "pretty sure" that he could handle it. He also stated that he would rather represent himself "if I had to chose [sic] between poor representation and self representation."

The judge then reviewed the charges and possible sentences with Riley and reminded Riley that he was responsible for becoming familiar with the rules of procedure and the rules of evidence. The judge pointedly told Riley that it was a mistake to represent himself, listing a number of pitfalls of self-representation. Acknowledging these admonitions, Riley replied: "... if you knew the facts as far as why I request to represent myself, then maybe you wouldn't think it was a mistake."The judge once more asked Riley if the reasons for his request to proceed *pro se* stemmed from a disagreement about how the case should be handled. Riley agreed, referring specifically to a disagreement with his counsel over the presentation of "mitigating evidence" and an "alibi defense." The judge again strongly advised Riley against representing himself.

When the judge asked if the attorneys wished him to ask any further questions of Riley, one of the prosecutors stated that he wished to address some of the issues raised by Riley in more detail. The prosecutor stated it was well known that the State intended to present latent fingerprint evidence from

a beer bottle at trial and that defense counsel had ethical concerns about Riley's proposed strategy for countering that evidence. He further stated: "So it's not simply ... a disagreement in terms of strategy, but restrictions, ethical restrictions on what defense counsel may be able to do, which has caused a conflict."

Defense counsel responded that he had concerns about raising such issues with the judge, since the judge would be the fact finder for purposes of sentencing. Defense counsel further stated that he had contacted the Professional Ethics Committee for input on his ethical concerns, and had raised those concerns with Riley. He stated that, due to the possible prejudicial impact on the trial, someone other than the trial judge should conduct an inquiry into the specific nature of the evidence in dispute.

*Riley,* 2004 WL 2850093, at *1-3.

At this point, the trial judge asked defense counsel "[w] hat are you asking me to do ... [if] anything?"(D.I. 24, at 55.) The following interaction occurred:

*5 DEFENSE COUNSEL: I don't think-I would say, based upon what I believe this discussion would be between Your Honor and Mr. Riley, and I assume with [the other defense attorney] and I present, that [an *ex parte in camera* hearing] would not be appropriate at this point in time. That it would be appropriate-and just so you are clear, [the other defense attorney] can disagree with me, if his opinion view is different-we do not oppose Mr. Riley's application [to proceed *pro se* ] based on our discussion with him. But I think the court can make its determination without having the inquiry, and I believe the inquiry would be detrimental to the process at this point in time.

THE COURT: Okay. Well, without going into any specifics, do I understand that there's an irreconcilable difference regarding evidence?

DEFENSE COUNSEL: I would say there's certainly likely to be, yes, sir.

THE COURT: All right. Do you agree with that, Mr. Riley?

RILEY: Yes. And ... for them reasons there, that's why they can't represent me. Because if they do

represent me, then certain evidence they couldn't put on....

RILEY: It's something greater than that, that I think should be discussed in private chambers, between me and my lawyers and you, yourself.

(D.I. 24, at 55-57.)After asking several questions concerning Riley's level of education, the judge ruled on his request to proceed *pro se,* explicitly declining to inquire further into the evidentiary issues that formed the basis for the disagreement between Riley and his counsel. The judge stated: "... I have endeavored to ascertain the reasons ... why Riley wanted to represent himself, and ... those reasons seemed to focus on issues of evidence, probably strategy, and I've tried to satisfy myself that ... it's irreconcilable ... and, further, ... I am not inclined, ... having satisfied myself that the differences between counsel and the defendant seem to relate directly to the ease itself, ... to hold some kind of an *in camera* proceeding with the defendant where I get involved in the details of that issue."

Once again strongly admonishing Riley about the dangers of representing himself, the judge determined that Riley's decision to proceed *pro se* was knowing, intelligent and voluntary. He further ordered that Riley's counsel would remain as "standby eounsel." When Riley objected to that arrangement, both the judge and counsel assured Riley that the purpose of standby counsel was to assist him only if he requested assistance. When the judge then explained that standby counsel would step in to represent Riley if he changed his mind about representing himself during the trial, Riley again objected, stating that the arrangement would result in a "conflict of interest."

During trial, Riley represented himself, with the help of standby counsel.... After trial had concluded, Riley requested that standby counsel represent him during the penalty phase. The Superior Court granted Riley's request.

*6 *Riley,* 2004 WL 2850093, at *1-3.

Riley presented his conflict of interest claims to the Delaware Supreme Court on direct appeal of his re-

trial, and the Delaware Supreme Court denied the claims as meritless. Therefore, the court will review the Delaware Supreme Court's decision under § 2254(d)(1) to determine if the decision was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.[FN2] Additionally, where Riley challenges the state court decision on factual grounds, the court will review the state court decision under § 2254(d)(2) to determine if it was based on an unreasonable determination of the facts in light of the evidence presented.

> FN2. A Sixth Amendment conflict of interest claim is usually treated as a special type of ineffective assistance of counsel claim because, if the attorney actively represented conflicted interests that adversely affected his performance, the attorney's assistance will be presumed to have been prejudicially ineffective. *See Cuyler v. Sullivan,* 446 U.S. 335, 350 (1980). In Delaware, ineffective assistance of counsel claims must be asserted and reviewed on postconviction review pursuant to Delaware Superior Court Criminal Rule 61. Therefore, when the Delaware Superior Court conducted a hearing on Riley's motion to proceed *pro se,* it specifically stated that any allegations involving the effectiveness of counsels' assistance would not be reviewed on direct appeal. (D.I. 17, *State v. Riley,* No. 259,2003, "Findings of Fact and Conclusions of Law", at ¶ 15 (Del.Super.Ct. Aug. 18, 2003)

The Sixth Amendment guarantees a criminal defendant "the right to adequate representation by an attorney of reasonable competence and the right to the attorney's undivided loyalty free of conflict of interest."*United States v. Gambino,* 864 F.2d 1064, 1069 (3d Cir.1988). To prevail on a Sixth Amendment claim based on a conflict of interest, the petitioner "must establish that an actual conflict of interest adversely affected his lawyer's performance."*Cuyler v. Sullivan,* 446 U.S. 335, 350 (1980). An actual conflict of interest arises when

"trial counsel's interests and the defendants' interests diverge [ ] with respect to a material factual or legal issue or to a course of action."*Government of Virgin Islands v. Zepp,* 748 F.2d 125, 135 (3d Cir.1984). Although typical conflict of interest cases arise in the context of an attorney's representation of multiple clients, the Third Circuit has held that conflicts of interest can arise in other cases, such as when counsel's personal interests are " 'inconsistent, diverse, or otherwise discordant' with those of his client and [those interests] affected the exercise of his professional judgment on behalf of his client."[FN3]*Id.; see also United States v. Gambino,* 864 F.2d 1064, 1070 (3d Cir.1988). A petitioner establishes an actual conflict of interest by "demonstrat[ing] that some plausible defense strategy or tactic might have been pursued ... [and] that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."*Gambino,* 864 F.2d at 1070.

> FN3. The seminal Supreme Court case involving actual conflicts of interest is *Cuyler v. Sullivan,* 446 U.S. 335, 350 (1980).*Sullivan* and subsequent Supreme Court jurisprudence regarding actual conflicts of interest arose in the context of an attorney's representation of multiple clients, where "the conflict exists between the interests of one defendant and the interests of other defendant's served by the same attorney."*Zepp,* 748 F.2d at135. Recently, in *Mickens v. Taylor,* 535 U.S. 162 (2002), the Supreme Court questioned the applicability of *Sullivan* to conflicts arising outside the context of multiple representation, and opined that it remains an open question whether *Sullivan* should be extended to other kinds of conflict of interest cases. *Id.* at 175-76.However, in its 1983 *Zepp* decision, the Third Circuit expressly extended *Sullivan* to conflict of interest cases other than those arising in the multiple representation context. *Zepp,* 748 F.2d at 135. The Third Circuit has not addressed the effect of *Mickens* on its holding in

Therefore, the court assumes that *Sullivan's* doctrine regarding actual conflicts of interest applies in Riley's case.

## 1. Claim One: Superior Court's inquiry into the conflict of interest

In his first claim, Riley criticizes the Superior Court for failing to conduct an *ex parte in camera* proceeding regarding the "conflict of interest" he had with his two defense attorneys. Pursuant to *Holloway v. Arkansas* and *Cuyler v. Sullivan,* a trial judge must conduct a threshold inquiry to determine if an actual and disqualifying conflict of interest exists in two situations: first, when an objection is made to an attorney's multiple representation, or second, in other "special circumstances ." *Holloway v. Arkansas,* 435 U.S. 475 (1978); *Cuyler v. Sullivan,* 446 U.S. 335 (1980). Although the Supreme Court has identified when a threshold inquiry into a potential conflict is required, the Supreme Court has not articulated a standard explaining how a court satisfies that threshold duty of inquiry, Therefore, as an initial matter, the Delaware Supreme Court's decision to deny Riley's claim regarding Judge Vaughn's failure to conduct an *ex parte in camera* hearing was not contrary to clearly established Federal law. *See Williams v. Taylor,* 529 U.S. 362, 406 (2000); *Fischetti v. Johnson,* 384 F.3d 140, 147-49 (3d Cir.2004).

*7 The court's inquiry under the reasonableness prong of § 2254(d)(1) is a bit more complicated. According to the Third Circuit, where, as here, there is no clearly established Supreme Court precedent addressing the issue before the court, the court reviewing the reasonableness of the state court's application of Supreme Court precedent [under § 2254(d)(1) ] ... must use as [its] point of departure the specific holdings of the Court's decisions. When assessing whether the state court acted reasonably in applying or refusing to apply that precedent, [the court] must be mindful that the issue is whether Supreme Court law "dictated" a result in [the] case, or whether the circumstances presented here were "closely analogous" to those that formed the basis

of earlier high court decisions.

*Fischetti,* 384 F.3d at 150-51 (internal citations omitted). A court may also consider the decisions rendered by lower federal courts when determining whether the state court reasonably applied Supreme Court precedent. *Id.* at 149;*Chadwick v. Janecka,* 312 F.3d 597, 613 (3d Cir.2002).

In Riley's case, the court uses as its point of departure the Supreme Court's rule that a court must conduct a threshold inquiry into a potential conflict. Then, in order to flesh out the steps needed to satisfy that threshold duty, the court turns to the Third Circuit's decision *Government of Virgin Islands v. Zepp,* 748 F.2d 125, 135 (3d Cir.1984). Pursuant to *Zepp,* the relevant issue is whether Judge Vaughn's conclusion that defense counsel did not need to be disqualified was the result of a sufficient factual inquiry "into the nature of the conflict and the client's awareness of the conflict."*Id.* at 139.

Prior to the March 19, 2003 colloquy, Riley filed two motions asserting his dissatisfaction with counsels' treatment of the fingerprint evidence from the beer bottle found at the scene of the murder. One motion requested Judge Vaughn to personally examine the fingerprint evidence, and the other motion requested permission to proceed *pro se* because defense counsel allegedly refused to have the fingerprint evidence properly evaluated. (D.I. 17, *Riley v. State,* No. 259,2003, App. to State's Ans. Br., B-13 through B-32, B-33 through B-36). Chemical testing performed prior to Riley's re-trial revealed that the fingerprint in question belonged to Riley.

During the March 19, 2003 colloquy on Riley's motion to proceed *pro se,* Riley again voiced his dissatisfaction with counsel's treatment of the evidence. Riley still described the problem as "evidentiary" in nature, and never asserted any other reason for his discontent with counsel's performance. After one of the prosecutors explained that Riley's characterization of the issue failed to recognize that the problem for defense counsel also involved a possible ethical dilemma, Judge Vaughn asked defense counsel to describe the nature of the

Case 1:07-cv-00194-GMS    Document 27    Filed 01/03/2008    Page 15 of 24

Slip Copy

Page 7

Slip Copy, 2007 WL 1795883 (D.Del.)
(Cite as: Slip Copy)

disagreement. Counsel responded that the issue involved an ethical concern regarding the admissibility of evidence, and he informed Judge Vaughn that he had actually written a letter that same morning to the Co-Chair of Delaware's Professional Ethical Committee regarding his concern. Judge Vaughn explicitly asked counsel what type of action was required, and counsel replied that the situation with Riley did not necessitate an *ex parte in camera* hearing at that particular point in time. Judge Vaughn then asked Riley more questions to ascertain the nature of the disagreement, and Riley still described the problem as a difference of opinion over the presentation of evidence. Riley consistently maintained that he wanted to represent himself, and he never asked for the appointment or substitution of new counsel.

**\*8** In short, Judge Vaughn's factual inquiry into the nature of the "conflict" and into Riley's awareness of the "conflict" sufficiently satisfied his threshold duty of inquiry, thereby eliminating the need for any other type of inquiry such as an *ex parte in camera* proceeding. *See*§ 2254(d)(1). Further, Judge Vaughn properly relied on counsel's assessment of the situation in determining that there was no conflict or need to conduct an *ex parte in camera* hearing, and he reasonably determined that the situation involved an evidentiary dispute that did not disqualify counsel from acting as stand-by counsel. *See Mickens,* 535 U.S. at 167-68 ("defense counsel is in the best position to determine if a conflict exists."); *See*§ 2254(d)(2). Moreover, because Judge Vaughn repeatedly asked Riley to describe the problem in his own words, and Riley consistently referred to the problem as one of evidence, it was reasonable for Judge Vaughn to conclude that the problem between Riley and counsel involved a difference of opinion over strategy and the presentation of evidence.[FN4] *Id.* Accordingly, the court will deny Riley's first claim.[FN5]

> FN4. Although Riley objected to the appointment of the two attorneys as stand-by counsel by stating that such appointment would create a conflict, Riley subsequently agreed to the appointment of counsel on a

stand-by basis after being assured by counsel and Judge Vaughn that he would be the one deciding what to offer as evidence and testimony. In response to Riley's objection to the appointment of stand-by counsel, counsel specifically stated that his understanding of stand-by counsel's role was "to protect [Riley's] interest in fundamental fairness as he proceeds, but not to interject into the trial any views we might have about the offering of testimony."(D .I. 17, App. to Appellant's Br. in *Riley v. State,* No. 259,2003, at A44.)Judge Vaughn also explained that "[t]he stand-by counsel is there to assist you, to the extent that you wish to have their assistance, in making decisions and handling the case. They, as stand by counsel, they don't tell you what to do, and it's up to you to as to when you want their assistance."*Id.* at A-45.Finally, Judge Vaughn specifically stated that if there were any issues that "develop in [the] area [of stand-by counsel's role), the Court can address them."*Id.*

> FN5. Additionally, even if Judge Vaughn should have undertaken a further initial inquiry, Riley is not be entitled to habeas relief because there was no actual conflict of interest that adversely affected counsel's performance. *See infra* at 14-17.

## 2. Claim Two: Delaware Supreme Court's inquiry into the perjury issue

In his next claim, Riley argues that he is entitled to habeas relief because the Delaware Supreme Court failed to hold an evidentiary hearing to determine if counsel possessed knowledge beyond a reasonable doubt that Riley's proposed alibi defense constituted perjury. Riley contends that the Delaware Supreme Court should not have relied on the statements contained in counsels' letter to the Professional Ethics Committee in determining the perjury issue; instead, the Delaware Supreme Court should have independently reviewed the records to which counsel referred.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

As an initial matter, Riley's pronouncement that attorneys must possess knowledge beyond a reasonable doubt that the defendant intends to commit perjury is a standard imposed by Delaware caselaw.FN6*See Shockley v. State*, 565 A.2d 1373, 1379 (Del.1989). Therefore, to the extent Riley's claim is premised on a violation of Delaware law, the claim fails to present an issue cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991).

> FN6. The Third Circuit has articulated a requirement that a defense attorney have a "firm factual basis" for believing that the defendant intends to testify falsely before informing the trial court of the defendant's perjurious intent. *United States ex rel Wilcox v. Johnson*, 555 F.2d 115, 122 (3d Cir.1986). Yet, even the Third Circuit has not addressed the precise issue here, namely, whether a state appellate court must conduct an evidentiary hearing to determine the basis for an attorney's belief regarding his client's planned perjury when that defendant represented himself at trial and did not testify at trial.

Further, the court has not found any Supreme Court precedent addressing the precise issue here, namely, whether a state court presented with a post hoc issue involving a defendant's intent to commit perjury is required to conduct an evidentiary hearing to ascertain the factual basis for defense counsel's belief that the defendant intended to commit perjury, or whether the state court may rely on the reasons proffered by counsel for reaching that conclusion.FN7 The closest Supreme Court precedent addressing this issue is *Nix v. Whiteside*, 475 U.S. 157 (1986), in which the Supreme Court held that a defendant's Sixth Amendment right to effective assistance of counsel is not violated when an attorney refuses to cooperate with the defendant in presenting perjured testimony at trial, or threatens to withdraw. In *Nix*, after the jury found the defendant guilty of second degree murder, the defendant filed a motion for new trial, asserting that his attorney had violated his right to a fair trial by advising him

not to present certain testimony because counsel believed the testimony to be perjurious. The trial court held a hearing, heard testimony by the defendant and counsel, and denied the motion for new trial after determining that the defendant would have perjured himself had he testified at trial. Thereafter, the state appellate court, the federal district court, the federal circuit court, and the United States Supreme Court all accepted the trial court's finding that "counsel believed with good cause that [the defendant] would testify falsely."*Id.* at 163.

> FN7. The court also has not found any Third Circuit case addressing the precise issue here.

*\*9 Although the trial court in *Nix* actually did conduct an evidentiary hearing to determine if the defendant's proposed testimony constituted perjury, the court finds nothing in *Nix* requiring a state appellate court to conduct an evidentiary hearing when, as here, the state trial court did not do so.FN8 Therefore, the court concludes that the Delaware Supreme Court's failure to conduct such a hearing was neither contrary to, nor an unreasonable application of, clearly established Federal law.

> FN8. In fact, the record reveals that Riley actually asked the Superior Court to refrain from conducting an inquiry into the perjury issue. After the jury issued its guilty verdict, Riley filed a motion for new trial, arguing that stand-by counsel had been operating under a conflict of interest because they threatened to reveal attorney-client privileged information to the court if he presented his alibi defense during his trial. (D.I. 17, App. to Appellant's Op. Br. in *Riley v. State*, No. 259,2003, at A-153.)Riley specifically stated that, "[a]t this late stage in the proceedings it would be potentially prejudicial for the court to review any new evidence in connection with [his] motion for new trial that could influence the trial judge's final decision as to the appropriate penalty."*Id.* at A-154.Limiting its review of the matter to "the colloquy at the time

> that [Riley] waived ... counsel ...," the Su-
> perior Court denied the motion for new tri-
> al because it was "satisfied that [Riley's]
> attorneys did not have any conflict of in-
> terest as such. There was simply a dis-
> agreement over trial strategy."*Id.* at A-146.

The court's inquiry, however, is not over. The fact
that the Delaware Supreme Court did not conduct
an evidentiary hearing regarding Riley's intended
perjury and that it did not make any express find-
ings of historical fact with respect to the perjury
does not mean that the Delaware Supreme Court re-
frained from making any factual findings with re-
spect to counsels' belief that Riley intended to com-
mit perjury. "[I]f no express findings of fact have
been made by a state court, the District Court [in a
habeas proceeding] must initially determine wheth-
er the state court has impliedly found material
facts."*Townsend v. Sain,* 372 U.S. 293, 314 (1963),
*overruled on other grounds by Keeney v. Tamayo-
Reyes,* 504 U.S. 1 (1992). Additionally, the pre-
sumption of correctness under § 2254(e)(1) applic-
able to a state court's explicit factual findings ap-
plies to factual findings that are implicit in the state
court's decision, unless the petitioner provides clear
and convincing evidence to the contrary. *See Weeks
v. Snyder,* 219 F.3d 245, 259 (3d Cir.2000); *Dicker-
son v. Vaughn,* 90 F.3d 87, 90 (3d
Cir.1996)(presumption of correctness applies to the
factual determinations of both state trial and ap-
pelllate courts). And finally, "[e]ven [when] a peti-
tioner can rebut a state court's factual finding by
clear and convincing evidence, [a court] can only
grant habeas relief if the state court's factual finding
was 'an unreasonable determination of the facts in
light of the evidence presented in the State court
proceeding.' " *Davenport v. Diguglielmo,* 2007 WL
412422, at *3 (3d Cir. Feb. 7,
2007)(non-precedential); *see*Fed. R.App. P. 32.1
(permitting the citation of federal judicial opinions
that have been designated as non-precedential, un-
published, etc.) Therefore, the court must determine
if the Delaware Supreme Court implicitly found Ri-
ley's proposed alibi defense to be perjurious, and if
so, whether that determination was reasonable in
light of the facts presented to the state appellate

court on direct appeal.

The court will base its review under § 2254(d )(2)
upon the following record, which is the same record
that was presented to the Delaware Supreme Court.
During his first trial in 1982, Riley testified tha t he
was in Philadelphia at the time of the robbery and
that he did not participate in the crime. Howe ver,
no witnesses testified during that trial to support
Riley's alibi defense, and a latent fingerprint li fted
from a beer bottle found at the scene of the cr ime
and identified as Riley's was introdueed into evid-
ence during the trial. *See Riley v. Snyder,* 840
F.Supp. 1012 (D.Del .1993), *vacated on other
grounds by Riley v. Taylor,* 62 F.3d 86 (3d
Cir.1995); (D.I. 17, App. to State's Ans. Br. in *R iley
v. State,* No. 259,2003, at B-57 through B-61.)

\*10 Prior to his re-trial in 2003, Riley sought chem-
ical testing on the same beer bottle found at the
crime scene in 1982. The chemical testing ide nti-
fied the fingerprint as Riley's. According to coun-
sel, Riley told counsel that he intended to tes tify
that the police planted his fingerprint on the bottle,
and that he intended to testify that he was in P hil-
adelphia at the time of the murder and not in Do ver
(where the murder took place). Riley also stated
that he would produce witnesses indicating that he
was in Philadelphia at the time of the murder.$^{\text{FN9}}$

> FN9. This information was revealed in
> counsel's letter to the co-chair of
> Delaware's Ethical Committee. (D.I. 30,
> App. to Appellant's Op. Br. in *Riley v.
> State,* No. 259,2003)

Counsel received a box of file materials from Ri-
ley's former post-conviction counsel during their
preparation for Riley's re-trial. That box contained
former counsel's notes outlining his interviews with
Riley. In those interviews, Riley described in signi-
ficant detail his own participation in the robbery
and subsequent murder. Riley also described other
actions that were consistent with events both prior
to and subsequent to the crime. Faced with the in-
consistency between Riley's proposed alibi defense
and the information contained in the post-

conviction file, defense counsel concluded that Ri-
ley's proposed alibi defense was false. (D .I. 30,
App. to Appellant's Op. Br. in *Riley v. State,* No.
259,2003)

At some point after that determination, Riley in-
formed counsel that he intended to represent him-
self during his trial. Given the possibility of being
appointed as stand-by counsel, counsel dictated a
letter to the Co-Chair of Delaware's Professional
Ethics Committee on March 19, 2003, the same
morning on which the Superior Court was to con-
duct a hearing on Riley's motion to proceed *pro
se.* In that letter, counsel asked if stand-by counsel
would have an ethical obligation to advise the court
of Riley's intent to present false testimony and, if
so, whether it would be proper to notify Judge
Vaughn about Riley's intent or whether counsel
should notify a judge other than Judge Vaughn.
Counsel also sent a letter to President Judge of the
Superior Court who was not presiding over Riley's
2003 criminal trial warning him that there may be a
potential problem in the future that would require
review from someone other than Judge Vaughn. *Id.*
Later that morning, after conducting a thorough
colloquy, Judge Vaughn granted Riley's motion to
proceed *pro se* and appointed defense counsel as
stand-by counsel.

Evidence of the latent fingerprint lifted from the
beer bottle in 1982 was introduced during Riley's
re-trial, as was evidence from the chemical testing
in 2003 that also identified the fingerprint as Ri-
ley's. Although Riley voluntarily waived his right to
testify on re-trial, his testimony from the 1982 trial,
including his alibi defense, was read to the jury.

Riley was convicted, and he appealed. On direct ap-
peal, Riley argued that counsel did not have a reas-
onable basis for concluding that Riley's proposed
alibi defense was false. In fact, Riley argued that
counsel manufactured the evidence demonstrating
the falsity of Riley's alibi defense. (D.I.17.)
However, Riley never disputed counsels' statements
that Riley had informed counsel about his intent to
present the alibi defense on re-trial and find wit-
nesses to support that defense. The Delaware Su-

preme Court denied the claims raised in Riley's ap-
peal.

**\*11** After reviewing the state supreme court's de-
cision in context with the record summarized
above, the court concludes that the Delaware Su-
preme Court's decision reflects an implicit factual
determination that Riley's proposed alibi defense
was perjurious. In his initial appellate brief, Riley
explicitly argued that the trial court had failed to
conduct a "*Shockley* " inquiry to determine if coun-
sel possessed accurate knowledge beyond a reason-
able doubt Riley intended to testify falsely at
trial.FN10Then, in his "motion for reargument *en
banc* " presented to the Delaware Supreme Court,
Riley specifically argued that the Delaware Su-
preme Court needed to conduct the "*Shockley* " in-
quiry into the basis for counsels' belief that Riley
intended to commit perjury. Although the Delaware
Supreme Court did not explicitly address Riley's
*Shockley* argument in its decision, the Delaware Su-
preme Court did discuss the three March 2003 let-
ters written by Riley's counsel explaining the basis
for counsels' conclusion that Riley intended to com-
mit perjury. The Delaware Supreme Court also con-
sidered, and rejected, Riley's argument that counsel
fabricated the evidence indicating that his planned
alibi defense was not true, and characterized the is-
sue before it as involving a client's "planned per-
jury," or an attorney's questioning of "the veracity
of his client's anticipated trial testimony,"*Riley,*
2004 WL 2850093, at *3. Finally, at the end of its
analysis, the Delaware Supreme Court cited
*Shockley* to support its statement that "[t]his Court
has recognized that no per se conflict of interest
between attorney and client is created when an at-
torney, recognizing his ethical obligations, ques-
tions the veracity of his client's anticipated trial
testimony."*Riley,* 2004 WL 2850093, at *3.

> FN10.*Shockley v. State,* 565 A.2d 1373,
> 1379 (Del.1989).

When viewed in this context, the Delaware Su-
preme Court's final conclusion that there was no
"factual or legal basis for Riley's contention that his
counsel's actions constituted a conflict of interest or

that his counsel should have been disqualified from representing him"$^{FN11}$ demonstrates the state supreme court's implicit factual determination that Riley's proposed alibi defense was fictitious. Riley attempts to rebut this factual finding by arguing that counsel was angered by Riley's failure to accept the plea agreement and therefore manufactured the evidence indicating the falsity of his alibi defense. However, because the record belies this specious argument, the court concludes that Riley has failed to provide any clear and convincing evidence to rebut the presumption that the Delaware Supreme Court's factual finding is correct. In turn, the court also concludes that the Delaware Supreme Court's determination that Riley planned to commit perjury was reasonable in light of the facts presented to the state appellate court during Riley's direct appeal. Therefore, to the extent Riley challenges the Delaware Supreme Court's decision on factual grounds, the court concludes that habeas relief is not warranted under § 2254(d)(2).

> FN11.*Riley,* 2004 WL 2850093, at *3.

**\*12** Having determined that the Delaware Supreme Court reasonably concluded that Riley's proposed alibi defense constituted perjury, the court must next determine if the Delaware Supreme Court's denial of Riley's conflict of interest claim was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent. In *Nix,* 475 U.S. at 176, the Supreme Court held that the type of conflict arising from a client's proposal to commit the crime of perjury does not constitute an actual conflict rendering an attorney's performance presumptively ineffective or requiring the attorney's automatic disqualification. The Supreme Court explained that, "[i]f a 'conflict between a client's proposal and counsel's ethical obligation gives rise to a presumption that counsel's assistance was prejudicially ineffective, every guilty criminal's conviction would be suspect if the defendant had sought to obtain an acquittal by illegal means."*Id.* at 176.

Here, because the alleged conflict stemmed from Riley's proposal to commit perjury, the Delaware

Supreme Court properly identified *Nix* as the governing precedent and analyzed Riley's claim within its framework. Therefore, the Delaware Supreme Court's decision was not contrary to clearly established Federal law.

Further, given *Nix's* clear and unequivocal holding that the type of conflict arising from a client's intent to commit perjury does not constitute an actual conflict, the court concludes that the Delaware Supreme Court reasonably applied Supreme Court precedent in holding that Riley's two defense attorneys were not operating under an actual conflict of interest requiring their disqualification.$^{FN12}$ And finally, given the absence of any actual conflict of interest, the court concludes that the appointment of the two attorneys as stand-by counsel did not violate Riley's Sixth Amendment right to conflict-free counsel.

> FN12. For example, the Delaware Supreme Court determined that defense counsels' refusal to pursue an alibi defense did not constitute a "conflict of interest" under the Delaware Lawyers' Rules of Professional Conduct because the case did not involve the representation of more than one client or involve representation materially limited by a personal interest of the attorney. Then, referring to Delaware caselaw and *Nix,* the Delaware Supreme Court explained that "no *per se* conflict of interest between an attorney and client is created when an attorney, recognizing his ethical obligations, questions the veracity of his client's anticipated trial testimony."*Riley,* 2004 WL 2850093, at *3. The Delaware Supreme Court also explained that, under *Nix,* a criminal defendant's right to testify does not include the right to testify falsely, and that an attorney may refuse to cooperate with a client's planned perjury without depriving the defendant of his right to counsel. *Id.*

Having determined that there was no actual conflict of interest, the court must review Riley's claim un-

der the two-pronged standard articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984) to determine if counsels' actions violated Riley's Sixth Amendment right to the effective assistance of counsel. FN13 *See* *Hess v. Mazurkiewicz*, 135 F.3d 905, 910 (3d Cir.1998) (if a petitioner can only establish the existence of a potential conflict of interest, then, pursuant to *Strickland*, the petitioner will have to demonstrate prejudice in order to prove counsel was ineffective). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistanee. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must establish prejudice by showing "a reasonable probability that, but for counsel's error the result would have been different."*Id.* at 687-96.A reasonable probability is a "probability sufficient to undermine confidence in the outcome."*Id.* at 688.In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See* *Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir.1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir.1987). The *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable."*Strickland*, 466 U.S. at 689.

FN13. Although the Delaware Supreme Court did not explicitly review the merits of Riley's ineffective assistance of counsel claims under *Strickland's* two-pronged standard, the Delaware Supreme Court implicitly addressed the issue by concluding that, pursuant to *Nix*,"an attorney who refuses to cooperate with his client's planned perjury, as is ethically required, does not deprive the defendant of his right to counsel."*Riley*, 2004 WL 2850093, at *3. Therefore, the court will review the claims under § 2254(d)(1).

***13** Riley first contends counsel performed ineffectively by threatening to expose his perjury to the court and by threatening to withdraw unless Riley accepted the plea agreement. The record belies this challenge. Counsel's letters to the Co-Chair of Delaware's Professional Ethics Committee and to the President Judge demonstrates counsel's conscientious attempt to avoid revealing the substance of Riley's intended perjury to the trial court. Additionally, even though counsel urged Riley to accept the plea offer, neither the letters nor any other document in the record indicates that counsel threatened to withdraw. (D.I. 3, at A-11 and A-12.)

Moreover, even if counsel did threaten to reveal Riley's perjury or to withdraw as counsel, such conduet did not fall below an objective standard of reasonableness. As explained in *Nix*,"[w]hether [counsel's] conduct is seen as a successful attempt to dissuade his client from committing the crime of perjury, or whether seen as a 'threat' to withdraw from representation and disclose the illegal scheme, [counsel's] representation of [defendant] falls well within accepted standards of professional conduct and the range of reasonable professional conduct acceptable under *Strickland*."*Nix*, 475 U.S. at 171.

Riley also cannot satisfy the prejudice prong of the *Strickland* standard. First, because the right to testify does not include the right to testify falsely, *Harris v. New York*, 401 U.S. 222, 225 (1971), Riley "has no valid claim that confidence in the result of his trial has been diminished by his desisting from the contemplated perjury."*Nix*, 475 U.S. at 176. Second, to the extent Riley contends that counsels' threats forced him to forego testifying at his re-trial, the transcript of the trial demonstrates that Riley's deeision not to testify was both voluntary and knowing. (D.I. 17, App. to Appellant's Op. Br. in *Riley v. State*, No.259,2003, at A-125 to A-129.) And, perhaps most significantly, Riley cannot establish prejudice because his testimony from his first trial setting forth the alibi defense was actually admitted into evidence in his re-trial. Accordingly, the court concludes that Riley's claim regarding counsels' alleged threats does not warrant habeas relief.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Riley also contends that trial counsel provided ineffective assistance during the hearing on Riley's motion to proceed *pro se* because counsel argued against Judge Vaughn conducting an *ex parte in camera* inquiry into Riley's disagreement with counsel. In *Holloway v. Arkansas*, the Supreme Court held that an attorney should not disclose client confidences to the judge who may be called upon later to impose the defendant's sentence for fear of creating a significant risk of unfair prejudice. *Holloway, 435 U.S. at 487 n. 11.* During the March 19, 2003 colloquy, counsel actually stated that, if any *ex parte in camera* hearing was needed at a later date, Judge Vaughn would not be the proper person to conduct such a hearing because of the impropriety of discussing evidentiary issues with a judge who, pursuant to Del.Code Ann. tit. 11, § 4209, would become the finder of fact for sentencing purposes. (D.I. 24, at 53.) Accordingly, because the Delaware Supreme Court's denial of the instant claim was explicitly based on *Holloway,* the court concludes that the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law.

### 3. Claim Three: involuntary waiver of representation

\*14 Finally, Riley contends that his waiver of representation was involuntary and unknowing because he only asked to proceed *pro se* in order to avoid representation by conflicted counsel. Interestingly, however, Riley filed his motion to proceed *pro se* before counsel determined that Riley's proposed alibi defense was false, thereby casting doubt on his contention that he only decided to proceed *pro se* after counsel allegedly threatened to withdraw. Moreover, as previously explained, Riley's two defense attorneys were not operating under an actual conflict of interest. These two reasons alone provide the court with a sufficient basis for denying Riley's instant claim as factually baseless.

More significantly, however, the court concludes that Riley's claim does not warrant habeas relief when reviewed under § 2254(d)(1) and the framework provided the clearly established Supreme

Court precedent governing self-representation claims. Pursuant to *Faretta v. California,* 422 U.S. 806 (1975), a criminal defendant's waiver of counsel is only valid if the defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open."*Faretta, 422 U.S. at 835.* A trial court must ensure that a defendant's waiver of counsel is knowing, voluntary, and intelligent before permitting a defendant to proceed *pro se. Iowa v. Tovar,* 541 U.S. 77, 88 (2004).

Here, the Delaware Supreme Court's decision that Riley voluntarily and knowingly waived his right to representation by counsel constituted a reasonable application of *Faretta.*Prior to granting Riley's request to proceed *pro se,* Judge Vaughn reviewed Riley's background, explained the serious charges and potential sentence that Riley faced, reviewed the rules that Riley would have to follow during his criminal proceeding, warned Riley that making mistakes could severely hurt his case, and repeatedly advised Riley that he should not represent himself. In turn, Riley repeatedly stated that he understood his rights and the consequences of waiving counsel. Thus, even if Riley's decision to proceed *pro se* stemmed from his desire to present evidence that counsel was ethically constrained to present, Judge Vaughn conducted a sufficient *Faretta* inquiry and reasonably concluded that Riley's decision to represent himself was not involuntary or coerced. Accordingly, the court will deny Riley's involuntary waiver of representation claim.

### B. Claim Four: participation of judges in Riley's direct appeal

In his final claim, Riley alleges that the Delaware Supreme Court erroneously affirmed his convictions and sentence due to the fact that two judges improperly participated in the decision. First, Riley contends that Chief Justice Myron Steele should have been disqualified from hearing his appeal because the Chief Justice presided over the 1989 postconviction evidentiary hearing on Riley's*Batson* claim. (D.I. 2, at ¶ 12C.) The court will deny this

claim as factually baseless. Although Chief Justice Steele participated in the initial appellate panel that denied **Riley's** appeal in September 2004, he was not on the actual panel that reconsidered and decided **Riley's** appeal *en banc* in October 2004.<sup>FN14</sup>

> FN14. The Delaware Supreme Court affirmed **Riley's** conviction and sentence rendered on re trial on September 13, 2004. **Riley** filed a motion for rehearing *en banc,* which resulted in the formation of a new panel to re-consider **Riley's** appeal. That new panel, consisting of Justices Randy Holland, Caroline Berger, and Jack Jacobs, reconsidered **Riley's** appeal and issued a new superseding order dated October 20, 2004 affirming **Riley's** conviction and sentence. *See Riley v. State,* 2004 WL 2850093, at *1 nn. 1-2 (Del. Oct. 20, 2004)*(en banc)(citing Del.Supr. Ct. R. 4).

**\*15 Riley** also contends that Justice Holland should not have been included in the new appellate panel on re-trial because Justice Holland was on the panel which denied **Riley's** postconviction appeal back in 1990, and it was the reversal of that 1990 decision that led to **Riley's** re-trial in 2003. Although the record reveals that this claim is procedurally defaulted,<sup>FN15</sup> the court will invoke its authority under § 2254(b)(2) to review the merits of the instant claim rather than engage in an analysis under the procedural default doctrine. *See Hameen v. Delaware,* 212 F.3d 226, 251-52 (3d Cir.2000)*(stating that a federal court may "act consistently with [28 U.S.C. § 2254(b)(2) ] when there is a possible procedural default.");* see also Bronshtein v. Horn, 404 F.3d 700, 728 (3d Cir.2005)*(rejecting a procedurally defaulted claim as meritless).

> FN15. Riley never presented his objection regarding Justice Holland to the Delaware state courts, and any attempt on Riley's part to obtain state court review of the instant claim at this point in time would be time-barred by Delaware Superior Court Criminal Rule 61(i)(1). Therefore, this claim is procedurally defaulted, precluding

review on the merits absent a showing of cause and prejudice, or a miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 749-51 (1991); *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir.2000); *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir.1999).

The Third Circuit has held that the appearance of bias on the part of a state court judge, with out more, does not rise to the level of a constitutio nal violation cognizable on habeas review. *See Johnson v. Carroll,* 369 F.3d 253, 259 (3d Cir.2004). Here, **Riley** does not allege, and the record does not reveal, any evidence that Justice Holland was actua lly biased against **Riley**, or that Justice Holland relied on any extrajudicial information in determining **Riley's** direct appeal. Therefore, the court will deny **Riley's** claim regarding Justice Holland as meritless.<sup>FN16</sup>

> FN16. If, however, the court cannot pro perly deny a procedurally defaulted claim as meritless, the court alternatively denies **Riley's** claim about Justice Holland as procedurally barred. **Riley** has not alleged, and the court cannot discern, any cause for **Riley's** failure to raise this claim to the Delaware state courts prior to filing the instant petition. In the absence of cause, the court does not need to address the issue of prejudice. Moreover, **Riley** has not provided reliable evidence of his actual innocence to satisfy the miscarriage of justice exception to the procedural default doctrine.

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong."28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The court concludes that Riley's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Riley's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

## ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that:

1. Petitioner James W. Riley's petition for the writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED. (D.I.2.)

2. The court declines to issue a certificate of appealability. *See*28 U.S.C. § 2253(c)(2).

D.Del.,2007.
Riley v. Carroll
Slip Copy, 2007 WL 1795883 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Alonzo Norris
SBI # 263971    N.H.U. 21/609
D.C.C.
1181 Paddock Rd
Smyrna, DE 19977

TO: OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
844 N. KING St. LICK Box 18
WILMINGTON, DE 19801-3570